THE STATE OF OHIO, APPELLEE, *v.* GRILLOT, APPELLANT.

(No. 616—Decided December 24, 1964.)

*Mr. R. K. Wilson,* for appellee.
*Mr. R. E. Boller,* for appellant.

KERNS, P. J. An affidavit was filed in the Municipal Court of Piqua charging that:

"On or about the 9th day of July, 1963 at the County of Miami, one Norbert George Grillot did at about 7:25 p. m. unlawfully drive a certain motor vehicle * * * over and upon Interstate 75 by making a cross-over at a point where signs were erected forbidding such action. This act is contrary to and in violation of Section 4511.12 of the O. R. C."

Thereafter, the defendant entered a plea of not guilty, was tried by the court, found guilty of the charge and ordered to pay a fine of $25 and the costs of prosecution.

Section 4511.12, Revised Code, provides in part as follows:

"No pedestrian, driver of a vehicle, or operator of a streetcar or trackless trolley shall disobey the instructions of any traffic control device * * *

"*No provision* of such sections *for which signs are re-*

*quired shall be enforced against an alleged violator if at the time and place of the alleged violation an official sign is not in proper position and sufficiently legible to be seen by an ordinarily observant person. * * *''* (Emphasis ours.)

Section 4511.01, Revised Code, defines "traffic control devices" as follows:

" 'Traffic control devices' means all signs, signals, markings, and devices placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic, including signs denoting names of streets and highways."

Although the evidence presented at the trial is sketchy, it appears therefrom that Interstate Highway 75 is a four-lane divided highway running generally north and south. The paved portions of the highway, which are twenty-four feet wide, are divided by a median strip which is forty feet in width.

At or about the time of the alleged offense, the defendant was traveling south and observed a cross-over to the northbound lanes of the highway. He entered the cross-over, and then, for the first time, noticed a sign which was located approximately in the middle of the median strip, or about twenty feet from the traveled portion of the highway.

According to the arresting officer, who was the state's only witness, the sign in question read "Maintenance and Emergency Vehicles Only" in letters measuring one and one-half inches in height.

The officer testified that he did not know where a user of the highway could first read the sign, but the defendant testified as follows concerning the legibility of the sign:

"Q. * * * when did you first see the sign in the medial strip? How close to it were you before you saw the sign? A. To be legible?

"Q. When did you first see the sign? A. I saw the white sign—let's say the outline of the white sign but not the lettering.

"Q. How soon did you see that, approximately? A. Well, I was interested in getting off the road and I didn't read it until I was in the interchange facing the sign, at right angles to the highway.

"Q. Now when were you first able to read the signs—when did they become legible to you? A. When I stopped.

"Q. Did you attempt to read them prior to that time? A. Most certainly but the wording was too small.

"Q. In other words, you are saying until you pulled up to the sign to stop you could not read it? A. Not very legibly.

"Q. Were you wearing your glasses that day? A. Yes, sir.

"Q. What is your vision with your glasses? A. Corrected to 20-20."

The same witness testified on cross-examination that, in his opinion, he could read the sign while traveling in the lane next to the medial strip if he would bring his car to a stop or reduce the acceleration of the car to a very low speed.

The defendant's testimony that he did not read the sign before entering the cross-over, and his further testimony that he could not, in his opinion, read the sign without almost coming to a stop so as to create a hazard on the traveled portion of the highway, appears to us to be completely consonant with reason and experience, and noticeably, the state produced no rebuttal evidence to dispute the testimony of the defendant upon this phase of the case.

Practical considerations suggested by the evidence point even more convincingly to the weakness of the state's case. Suppose, for example, that the alleged offense occurred during the night season. Surely, the state would not seriously contend that an ordinarily observant motorist traveling on an interstate highway could see one and one-half inch lettering on a sign located twenty feet off the highway before entering the cross-over. Manifestly, a criminal charge predicated upon such an unreasonable burden would be in direct conflict with the intent and purpose of the Traffic Code.

Other than the arresting officer and the defendant, the only witness to testify at the trial was one Charles H. Brown of the Sign Maintenance Division of District Seven of the State Highway Department, who was called by the defense. His testimony may be characterized generally as "uncertain," but he did affirmatively state that "the signs and lettering were deliberately made small so as to be inconspicuous and not have attention drawn to them." He further testified that he did not know

whether the signs were established by any public authority, either state or federal.

Since the state produced *no* evidence that the disputed sign was legible under the circumstances of this case before the alleged violation, and since the defendant produced ample evidence showing that he was in a position of violation before he could effectively read the command of the sign, we are of the opinion that the trial court should have sustained the defendant's motion for judgment at the conclusion of the evidence.

Under such circumstances, and it appearing further that the undisputed facts admit of but one conclusion, this court may enter the judgment which the trial court should have rendered. 4 Ohio Jurisprudence 2d 592, Section 1216.

Accordingly, the judgment will be, and hereby is, reversed and the defendant discharged.

*Judgment reversed.*

SHERER and CRAWFORD, JJ., concur.