WHITE ET AL., *v.* OHIO DEPARTMENT OF TRANSPORTATION, APPELLANT AND CROSS-APPELLEE; KLYZA, ADMX., APPELLEE; ROSS TOWNSHIP, APPELLEE AND CROSS-APPELLANT.

WHITE ET AL., *v.* KLYZA, ADMX., APPELLEE; OHIO DEPARTMENT OF TRANSPORTATION, APPELLANT AND CROSS-APPELLEE; ROSS TOWNSHIP, APPELLEE AND CROSS-APPELLANT.

[Cite as White *v.* Ohio Dept. of Transp. (1990), 56 Ohio St. 3d 39.]

(Nos. 89-1114 and 89-1115—Submitted September 18, 1990—
Decided December 12, 1990.)

ney general, *Susan M. Sullivan* and *Sheryl Creed Maxfield,* for appellant and cross-appellee Ohio Department of Transportation.

*Green & Green* and *Thomas M. Green,* for appellee and cross-appellant Ross Township.

*Bauer, Morelli & Heyd Co. L.P.A., Arnold Morelli, Daniel A. Kruse* and *John M. Isidor,* for appellee Carol Klyza, administratrix of the estate of Timothy Klyza.

H. BROWN, J. For the reasons which follow, we reverse the judgment of the court below as to ODOT, affirm as to its disposition of the directed verdict, and remand for new trial.

I

Duty to Cut Foliage
on Morgan-Ross Road

The Ohio Manual of Uniform Traffic Control Devices for Streets and Highways ("MUTCD") has been adopted as the state's official specifications for highway signs and markings pursuant to the mandate of R.C. 4511.09. R.C. 4511.10 requires ODOT to comply with the MUTCD in erecting and maintaining highway signs and markings. *Slavick* v. *Ohio Dept. of Transp.* (1988), 44 Ohio App. 3d 19, 22-24, 540 N.E. 2d 748, 751-753; *Pierce* v. *Ohio Dept. of Transp.* (1985), 23 Ohio App. 3d 124, 127-128, 23 OBR 235, 239, 491 N.E. 2d 729, 732-733; cf. *Royce* v. *Smith* (1981), 68 Ohio St. 2d 106, 22 O.O. 3d 332, 429 N.E. 2d 134 (R.C. 4511.11[A] requires townships and other local authorities to comply with the MUTCD in erecting and maintaining highway signs). Based on Section 2F-1 of the MUTCD, the court of

*Anthony J. Celebrezze, Jr.,* attor-

appeals held that ODOT has a duty to cut roadside foliage along county and township roads intersecting state highways, where the foliage obstructs the view of traffic signs which ODOT is required to maintain.

Section 2F-1 of the MUTCD states in pertinent part:

"Special attention and necessary action should be taken to see that weeds, trees, shrubbery and construction materials do not obscure the face of any sign."

As ODOT notes, the word "should" in the MUTCD denotes an "advisable usage, recommended but not mandatory." MUTCD Section 1D-2. Thus, Section 2F-1 of the MUTCD, by itself, does not require ODOT to cut roadside foliage which obscures traffic signs.

However, ODOT is subject to a general duty to maintain the state highways. R.C. 5535.01(A), 5535.08. ODOT does not dispute that these statutes require it to exercise "ordinary, reasonable care" in maintaining these highways. This general duty of care includes a requirement that ODOT exercise reasonable care to ensure that roadside foliage within the right-of-way for state highways does not obstruct a driver's view of traffic signs or signals.

Our recognition of this particular duty does not end the inquiry, because the instant case does not involve signs controlling traffic on a state highway. Though ODOT erected and maintained the stop signs governing Morgan-Ross Road as part of its maintenance of S.R. 126, Morgan-Ross Road is not a state highway, but a "township road" as defined in R.C. 5535.01(C).

R.C. 5535.08 provides that "[t]he state, county, and township shall each maintain its roads, as designated in section 5535.01 * * *." R.C. 5571.02 also provides that "[t]he board of township trustees shall have control of the township roads of its township and shall keep them in good repair. * * *" These statutes impose a general duty on Ross Township to maintain Morgan-Ross Road. As with ODOT's general duty to maintain the state highways, this duty includes a requirement that the township exercise reasonable care to ensure that foliage along its roads does not obstruct a driver's view of traffic signs or signals. Further, the township is subject to an express statutory duty to cut roadside foliage "between the first and twentieth days of June, the first and twentieth days of August, and, if necessary, between the first and twentieth days of September of each year or whenever necessary to prevent or eliminate a safety hazard." R.C. 5579.08.

The General Assembly has expressly placed the duty to cut foliage along Morgan-Ross Road on the township, and has gone so far as to specify particular dates during the growing season when the foliage is to be cut. While Ross Township may cooperate with other governmental bodies in fulfilling its maintenance duties, it remains primarily responsible for the condition of its roads. See 1981 Ohio Atty. Gen. Ops. No. 81-083. Given this explicit statutory allocation, we see no need to impose an implied concurrent duty on the part of ODOT to ensure that the foliage is cut. Indeed, the existence of an implied concurrent duty might foster a situation in which neither ODOT nor the township cuts the foliage because each is relying on the other to do the cutting.

Accordingly, on the facts presented in this record, we do not find a duty imposed on ODOT to cut foliage along Morgan-Ross Road. We reverse the judgment of the court of appeals and reinstate the judgment of the trial court dismissing all claims by and against ODOT.

## II
### Directed Verdict Issues

The trial court directed a verdict in favor of the Whites and against the Klyza estate on the issue of negligence. With regard to the estate's claim against Ross Township for wrongful death, the presiding judge instructed the jury:

"Defendant Ross Township has the burden to prove by a preponderance of the evidence that Timothy Klyza was negligent, contributing to his own death and the extent of that negligence.

"As you have previously been instructed, Timothy Klyza was negligent as a matter of law in failing to observe the stop sign and that negligence was a proximate cause of his death."

Following this instruction, the jury returned a verdict in favor of Ross Township on the wrongful death claim. The jury apportioned fifty-one percent of the fault in both claims to Mr. Klyza's negligence and forty-nine percent to Ross Township's negligence. The estate appealed from this judgment. While the appeal was pending, the Whites' claims against all defendants were settled.

The estate asserted the directed verdict as an assignment of error in its appeal of the wrongful death claim. The court of appeals sustained this assignment of error and remanded the case for a new trial. In its appeal to this court, Ross Township raises several issues related to the directed verdict.

### A
#### Standing to Appeal

Ross Township initially argues that the estate had no standing to claim error on this issue in the court below because the directed verdict pertained to the Whites' claims against the estate, not the estate's claim against Ross Township.

This argument ignores the trial court's instructions to the jury on the issue of comparative negligence. The presiding judge told the jury that Ross Township had the burden of proving Timothy Klyza's contributory negligence, then stated that Mr. Klyza had been contributorily negligent as a matter of law. This instruction amounted to a partial directed verdict in favor of Ross Township because it precluded the jury from finding that there had been no contributory negligence. Given this linkage between the directed verdict on the Whites' claim and the instructions on the wrongful death claim, any error in granting the directed verdict could be prejudicial to the estate's case in both claims. Accordingly, we hold that the estate had standing to appeal from the directed verdict.

### B
#### Statutory Excuse for Failure to Stop

The Klyza estate argues, and the court below agreed, that R.C. 4511.12 potentially excuses the estate from civil liability. Ross Township contends that the statute excuses only criminal liability for failure to obey a traffic sign. We agree.

R.C. 4511.12 states in pertinent part:

"No provision of this chapter [R.C. Chapter 4511, which defines traffic violations] for which signs are required shall be enforced against an alleged violator if at the time and place of the alleged violation an official sign is not in proper position and sufficiently legible to be seen by an ordinarily observant person. * * *"

The statute concerns enforcement of the traffic laws "against an alleged violator," which is a clear reference to criminal prosecutions for traffic violations. It creates a legal excuse for the criminal violation. There is no mention

of the civil liability which may arise from violation of a traffic sign.

The Klyza estate and the court below rely on *State* v. *Grillot* (1964), 2 Ohio App. 2d 81, 31 O.O. 2d 113, 206 N.E. 2d 420, for the proposition that R.C. 4511.12 also creates an excuse for civil liability. *Grillot,* however, is distinguishable from the instant case. That case involved a prosecution for failure to obey an illegible traffic sign, and not (as here) a civil action predicated on negligent failure to obey a traffic sign.

Our prior cases have recognized that a person may be excused from civil liability for failure to comply with traffic laws where circumstances make it impossible for the driver to comply. *Smiddy* v. *The Wedding Party, Inc.* (1987), 30 Ohio St. 3d 35, 30 OBR 78, 506 N.E. 2d 212, paragraph one of the syllabus; *Bush* v. *Harvey Transfer Co.* (1946), 146 Ohio St. 657, 33 O.O. 154, 67 N.E. 2d 851, paragraph two of the syllabus. In the instant case, the Klyza estate claims that compliance with the stop sign was impossible because foliage obscured the sign. However, impossibility does not necessarily arise just because a traffic sign is obscured or partially obscured. In particular cases, there may be circumstances which would indicate to a reasonable and prudent person that he should stop at an intersection despite the obscuring or partial obscuring of a stop sign. Conversely, there may be situations where the stop sign is visible, but other factors render compliance impossible. Each case should be evaluated on its own facts, employing the principles we have set forth in *Smiddy* and *Bush, supra.*

Accordingly, we hold that R.C. 4511.12 does not provide an excuse from civil liability for failure to obey the command of a traffic sign which is not clearly visible. However, the degree to which the view of the sign is obstructed should be considered by the trier of fact in determining if the party who failed to obey the command of the sign is excused from liability because compliance was impossible.

## C
### Whether the Directed Verdict was Proper

Finally, we address the issue of whether a directed verdict was proper. The finding of negligence against the Klyza estate was predicated on Mr. Klyza's failure to obey the stop sign. The estate argued that compliance with the stop sign was impossible because the foliage rendered it invisible.

The estate elicited testimony from several witnesses on this issue. Carol Klyza testified that the foliage created a "tunnel vision effect" of a straight road without any intersections. She claimed not to have seen the stop signs or the intersection until the car was twenty-five or thirty feet from the right-hand sign. When she noticed the stop sign, she said, "Tim, there is a stop sign," and her husband responded, "Oh, shit." Then, the two vehicles collided.

Lieutenant Ray Thomas of the Butler County Sheriff's Department testified that, on the night of the accident, the stop signs were not visible from the bridge on Morgan-Ross Road, approximately two hundred feet north of the intersection. He estimated that the right-hand sign could not be seen by an approaching driver from more than fifty feet away. He also described an incident a few days before the accident on the same road in which he had almost overrun the stop sign.

Officer Frank Smith, who investigated the accident, testified that the right-hand sign was visible from one hundred fifty feet north of the in-

tersection, and the left-hand sign from fifty feet, when he observed the intersection on the night after the accident. He was unable to see the signs when approaching the intersection until he "was almost into the intersection at 35 miles per hour."

Two local residents, Dale Shaw and William Slinger, also testified that the foliage made it difficult to see the stop signs.

The township also presented evidence on visibility. Alan Butler, a township employee at the time of the accident, testified that the stop signs were clearly visible for several hundred feet north of the intersection. Butler's testimony was corroborated by that of Taylor Crawford, an ODOT employee, who stated in a deposition that he needed to cut only three small tree limbs the day after the accident.

Robert Yordy, an expert on accident reconstruction, calculated that the events described by Carol Klyza took at least three seconds. In three seconds at fifty miles per hour, the Klyza vehicle would have travelled two hundred and nineteen feet. Allowing for driver reaction time, he estimated that the car could have braked to a stop from fifty miles per hour in two hundred and nine feet.

Civ. R. 50(A)(4) provides that a court should direct a verdict when, "after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party * * *." Conversely, if reasonable minds could come to more than one conclusion on the evidence

presented, the court should permit the issue to go to the jury. O'Day v. Webb (1972), 29 Ohio St. 2d 215, 58 O.O. 2d 424, 280 N.E. 2d 896.

Here, the evidence conflicts on a material issue. If the testimony presented by the Klyza estate is credited, Mr. Klyza was unable to see the stop signs or the intersection in time to comply with them, and thus was not negligent in failing to stop in time. If the testimony of the township and ODOT is credited, Mr. Klyza would have been able to comply with the stop signs, and was negligent to at least some degree in failing to do so or to take evasive action to avoid a collision with vehicular traffic on S.R. 126. Reasonable minds can come to more than one conclusion on the issue of whether compliance was possible. It was therefore error for the court to remove this issue from the jury. O'Day, supra; see, also, Trussell v. General Motors Corp. (1990), 53 Ohio St. 3d 142, 146, 559 N.E. 2d 732, 736. We affirm the judgment of the court of appeals on this issue and remand the cause for a new trial[2] on the wrongful death claim and on the issue of liability to the Whites. Because the claims of the Whites have been settled, on remand the court need only determine the percentage of fault attributable to each defendant as to its liability to the Whites and enter judgment as appropriate on the cross-claims for contribution so that each party bears its proportionate share of the settlement payment.

## III
### Admission of Testimony on Subsequent Remedial Measures

As noted in Part II(C), supra,

---

[2] Under R.C. 2743.03(E)(2), a remand from the Court of Claims to the court of common pleas will be possible, now that the state is no longer a party.

Taylor Crawford of ODOT and Alan Butler of Ross Township testified on their cutting of the foliage along Morgan-Ross Road on July 16, 1984, the day after the accident. On cross-examination by the estate, Officer Smith testified that there was still a visibility problem after the July 16 foliage-cutting. The estate proffered further testimony from Officer Smith concerning conditions on July 17, two days after the accident. The trial court excluded this testimony because it was "too remote" in time and "the potential prejudice outweighs the probative value * * *." The court of appeals reversed and held that the evidence should be admitted because it "tended to impeach the testimony" of Crawford and Butler.

On appeal, Ross Township argues that this testimony is inadmissible under Evid. R. 407. That rule states:

"When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

The Klyza estate offered the testimony for impeachment, which is permissible under Evid. R. 407. However, even though evidence may be otherwise admissible, it is still subject to exclusion under Evid. R. 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Here, the estate was able to present a great deal of other testimony which contradicted that of Crawford and Butler. The testimony describing conditions two days after the accident would be less probative than testimony describing the scene the day after the accident, due to the passage of time. After considering all of this, the trial court concluded that the balancing test of Evid. R. 403 favored exclusion. After reviewing the record, we cannot say that this was an abuse of discretion. Accordingly, we reverse the court of appeals on this issue. However, inasmuch as we must remand the action for further proceedings, we decline to direct the disposition of discretionary evidentiary rulings which may arise, and which may arise on a factual record which is different from the one we have reviewed.

## IV
## Conclusion

The judgment of the court of appeals is affirmed in part and reversed in part, and the cause is remanded to the Court of Claims for a new trial on the wrongful death claim and on the issue of liability to the Whites.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

MOYER, C.J., HOLMES, DOUGLAS, WRIGHT and RESNICK, JJ., concur.

SWEENEY, J., dissents.