JOURNAL ENTRY AND OPINION
{¶ 1} The plaintiff-appellant, Venis Moss (appellant), appeals the judgment of the Cuyahoga County Common Pleas Court which granted a directed verdict to the defendant-appellee, University Hospitals Health System (UH), and dismissed her wrongful termination lawsuit.
{¶ 2} The record reveals that UH hired the appellant on October 10, 1998 as a central billing office clerk for the hourly wage of $7. Just after her 90 day probationary period, on January 14, 1999, the appellant and fellow CBO clerk, Sandra Dunson, discussed the recent death of a young man who had been shot in the Cleveland Metroparks. The appellant claims that Dunson informed her that her husband wanted her to learn to use a gun and that if anyone got in her face she would shoot them. The appellant claims that she responded to this statement by saying that she did not care for guns and that her husband would not be permitted to have a gun in the house or he would have to place it out of her sight.
{¶ 3} The following day, the appellant and Dunson were summoned to their manager's office where they were questioned regarding the incident. The manager gave both the appellant and Dunson Corrective Action letters that suspended them from employment pending a complete investigation. The letter stated that the appellant had agreed with another employee's comment that she would obtain a gun, learn how to use it and shoot any one who got in her way, or in her face. After further investigation, UH subsequently terminated the appellant's employment on January 25, 1999. Dunson, the employee alleged to have made the statement, was also terminated.
{¶ 4} The appellant filed her complaint against UH on August 11, 2000, seeking compensatory and punitive damages for wrongful termination, negligence and breach of public policy. A jury trial commenced on February 26, 2002, however, at the close of the appellant's evidence, the trial court granted UH's motion for a directed verdict and dismissed the appellant's case.
{¶ 5} The appellant submits three assignments of error for our review, the first of which is as follows:
 {¶ 6} I. The trial court erred by making in favor of defendant a directed verdict, since sufficient evidence exists in the record to substantiate that University Hospital's policies created an exception to the employment at will doctrine.
{¶ 7} A directed verdict should be granted if, after construing the evidence most strongly in favor of the party against whom the motion is directed, the court finds that upon any determinative issue reasonable minds could come to but one conclusion and that conclusion is adverse to such party. Civ.R. 50(A)(4); White v. Ohio Dept. of Transp. (1990),56 Ohio St.3d 39, 45. If reasonable minds can come to more than one conclusion the issue should go to the jury. White, supra; Conover v. Lake Cty. Metro Parks Sys. (1996), 114 Ohio App.3d 570, 573.
{¶ 8} Neither we nor a trial court may weigh the evidence or assess the credibility of the witnesses when considering a motion for a directed verdict. Strother v. Hutchinson (1981), 67 Ohio St.2d 282,284-285. If the party opposing the motion did not present sufficient evidence to prove an essential element of their claim, the motion for directed verdict is appropriate. O'Day v. Webb (1972), 29 Ohio St.2d 215,220. Therefore, a motion for a directed verdict presents a question of law which the appellate court reviews de novo. Scanlon v. Fox (2001) Cuyahoga App. No. 78859, 6-7; Howell v. Dayton Power Light Co. (1995), 102 Ohio App.3d 6, 13.
{¶ 9} The law in Ohio is well settled that employment for an indefinite period of time is presumed to be employment-at-will. See, Henkel v. Educational Research Council (1976), 45 Ohio St.2d 249, 251. As a general rule, either party to an employment-at-will agreement may terminate the employment relationship at any time and for any reason not contrary to law. Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100,103; Wright v. Honda of Am. Mfg., Inc. (1995), 73 Ohio St.3d 571 at 574.
{¶ 10} It is undisputed that the appellant did not have an employment contract with UH. The appellant would like this court to elevate her employee handbook to the status of a contract with UH for continued employment and find that she was not an at-will employee. The appellant argues that the corrective action guidelines within the handbook are in place for the protection of the employees and thus it created an employment contract. We are not persuaded.
{¶ 11} The record does not contain a complete copy of the UH employee handbook and the appellant provides only one section for our review, Section, 606.1, regarding employee conduct and corrective action. We note that the appellant does not contend that UH failed to follow the corrective action guidelines other than her claim that UH failed to investigate the incident prior to her suspension.
{¶ 12} Section 606.1 lists the forms of corrective action available to UH for the enforcement of rules as follows: (1) written confirmation of counseling; (2) written warning; (3) either suspension without pay or a final warning in lieu of suspension; and (4) discharge. UH is not required to institute one available action prior to another, thus UH may decide to immediately discharge an employee versus issue a warning.
{¶ 13} The appellant claims that this disciplinary policy is a promise by UH that its employees will not be discharged without just cause and created an exception to the at-will employment doctrine. We disagree and find that the appellant was not promised continued employment with UH by the existence of disciplinary guidelines in the employee handbook. Indeed, the appellant does not cite any legal authority to support this contention.
{¶ 14} There are two exceptions to the general rule of at-will employment where the employee is hired for an indefinite period of time: implied contract and promissory estoppel. Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d at 103-104. Under the implied contract exception, "a handbook may be found to alter the terms of employment at will only if the employee and employer have agreed to create a contract from the writing." Tohline v. Central Trust Co., N.A. (1988), 48 Ohio App.3d 280,282-283. See, Uebelacker v. Cincom Systems, Inc. (1988),48 Ohio App.3d 268, 273-274 and Vitanza v. First Natl. Supermarkets, Inc. (June 24, 1993), Cuyahoga App. No. 62906. In the absence of mutual assent, a handbook is merely a unilateral statement of rules and policies which creates no rights and obligations. Tohline, supra at 282; Latimore-Debose v. BVM, Inc. (Apr. 4, 1996), Cuyahoga App. No. 69439, 7-8.
{¶ 15} Although employee handbooks, policy manuals, and the like are not contracts of employment, they may define the terms and conditions of an employment relationship if the employer and employee manifest an intention to be bound by them. Strasser v. Fortney Weygandt, Inc., (Dec. 20, 2001), Cuyahoga App. No. 79621.
{¶ 16} In the instant case, there is no evidence that the employee handbook amounted to a contract between UH and the appellant, thus, the appellant has not shown that an implied contract existed. Further, the defendant admits that she did not receive any promises which altered her status as an at-will employee and thus, she cannot be said to have justifiably relied upon a promise as required by the doctrine of promissory estoppel.
{¶ 17} The appellant also argues that she was hired as a permanent employee and that, after a 90 day probationary period, her termination could only be effected by one of the following: (a) upon the death of the employee, (b) upon the incapacity of employee, or by disciplinary procedures according to corrective action guidelines. The appellant has failed to cite, and we do not find, any support of this contention in the record.
{¶ 18} In fact, the appellant testified that her signature appeared on her application for employment with UH in acceptance of the terms contained therein, including the following:
 {¶ 19} My employment will be at-will, and not for any specific period of time, will not constitute an employment contract, and that either I or the Hospital will be free to terminate the relationship at anytime for any reason. I also understand and agree that no one has authority to vary this understanding except in a writing directed to me and signed by an authorized officer of the Hospital * * *
 {¶ 20} I have read and understand the foregoing and agree to be absolutely bound by this.
{¶ 21} The appellant further testified and admitted that she did not receive anything in writing which would alter or change the at-will employment so recognized.
{¶ 22} In Wing v. Anchor Media, Ltd. Of Texas (1991)59 Ohio St.3d 108, the Ohio Supreme Court found that [a]bsent fraud in the inducement, a disclaimer in an employee handbook stating that employment is at-will precludes an employment contract other than at-will based upon the terms of the employee handbook. Wing, syllabus.
{¶ 23} After reviewing the evidence in the appellant's favor, we find that reasonable minds can come to but one conclusion, and that conclusion is against the appellant. The appellant failed to present sufficient evidence that she was other than an at-will employee in order to avoid the directed verdict.
{¶ 24} The appellant's first assignment of error is not well taken.
{¶ 25} We review the appellant's interrelated second and third assignments of error together.
 {¶ 26} II. The trial judge's decision was against the manifest weight of the evidence of public policy.
 {¶ 27} III. The trial judge errored [sic], as the decision was against the manifest weight of the evidence.
{¶ 28} In determining if a conviction is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172, citing Tibbs v. Florida (1982), 457 U.S. 31, 102 S.Ct. 2211. The court should consider whether the evidence is credible or incredible, reliable or unreliable, certain or uncertain, conflicting, fragmentary, whether a witness was impeached and whether a witness had an interest in testifying. State v. Mattison (1985), 23 Ohio App.3d 10.
{¶ 29} Where a judgment is supported by competent and credible evidence going to all the essential elements of the case, a reviewing court will not reverse the judgment as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. Moreover, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact to decide. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus; see also, State v. Smith (2000), 87 Ohio St.3d 424,2000-Ohio-450.
{¶ 30} In these assignments of error, the appellant argues that the trial court's judgment that she was an at-will employee is against the manifest weight of the evidence. The appellant contends that UH violated public policy when it terminated her employment. We have previously determined that the appellant failed to demonstrate an exception to her employment-at-will status and further find that she has failed to support her claim that her termination violated public policy.
{¶ 31} Next, the appellant argues that the trial court's judgment was against the manifest weight of the evidence because she was not an at-will employee and because the manager relied on hearsay when she was suspended without an investigation.
{¶ 32} Regina Quilling, UH's CBO manager, testified that three clerks, who were visibly shaken, came to her office and reported the conversation between the appellant and Dunson. The billing coordinator for UH, Kathleen Gates, testified that she heard the comments made by Dunson and that the appellant agreed with those comments.
{¶ 33} The appellant denied this and testified that she did not threaten anyone with a gun and maintained that she and Dunson were discussing a recent shooting that occurred in the Metroparks. Quilling conducted an interview of both the appellant and Dunson prior to their effective suspension. The appellant's letter of termination also indicates that upon further investigation, UH determined to end their employment relationship. However, whether UH conducted an investigation is not dispositive, as UH was within it rights to terminate the appellant with or without cause.
{¶ 34} There is no evidence that the appellant was wrongfully terminated. Accordingly, the appellant's second and third assignments of error are overruled.
Judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, P.J., AND PATRICIA ANN BLACKMON, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R.22(B), 22(D) and 26(A); Loc.App.R.22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also S.Ct.Prac.R. II, Section 2(A)(1).