[Cite as *Cox v. Ohio Dept. of Transp.*, 2011-Ohio-4847.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

SANFORD W. "BILL" COX, et al.

    Plaintiffs

    v.

OHIO DEPARTMENT OF TRANSPORTATION

    Defendant

Case No. 2009-07342

Judge Clark B. Weaver Sr.

<u>DECISION</u>

{¶1}    Plaintiffs brought this action alleging negligence and loss of consortium. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.[1]

{¶2}    This case arises out of a motorcycle crash involving plaintiff[2], Sanford W. Cox, which occurred in Athens County on Sunday, September 2, 2007, at approximately 4:00 p.m. Plaintiff, who was then 66 years old and a resident of Parkersburg, West Virginia, testified that at around noon that day, he decided to take a leisurely ride on his 1997 Honda Gold Wing motorcycle. Plaintiff stated that he commonly made such excursions on Sunday afternoons, and that he had no established route or destination, other than to return home in time for a family dinner at approximately 5:00 p.m.

---

[1]Plaintiffs' October 12, 2010 motion in limine to prohibit defendant from introducing the testimony of Dale Fletcher and Jaime Hendershot is DENIED as moot.
[2]As used herein, "plaintiff" shall refer to Sanford W. Cox.

{¶3}    From Parkersburg, plaintiff rode south on West Virginia State Route 68, which essentially parallels the Ohio River, to Ravenswood, West Virginia, where he stopped to rest and have coffee at a McDonald's restaurant.  Plaintiff then crossed the Ohio River and began traveling north on Ohio State Route 124.  Plaintiff stated that he decided to travel on State Route 124 because he knew it to be a scenic route.

{¶4}    Unbeknownst to plaintiff, a segment of State Route 124 was closed at that time approximately one mile north of the intersection with Athens County Road 62 (also known as Youba Ridge Road).  Plaintiff testified that from the time he entered Ohio and began traveling on State Route 124, he never saw a sign stating that the road was closed.  Plaintiff acknowledged that when he passed through the intersection with County Road 62, he saw a barricade with an attached sign several feet from the roadway, but he stated that it was positioned such that he could not read it and he therefore assumed that it was not in use.

{¶5}    Plaintiff stated that as he continued past the intersection, he was traveling about 40 miles per hour and was looking at the scenery, which included the Ohio River to his right and high bluffs to his left.  According to plaintiff, the road curved to the left around one of the bluffs and then straightened, at which time he saw a pile of sand three to four feet high in his lane of travel.  There is no question that a large orange and white barricade was situated above or in front of the sand, spanning nearly the width of the lane, but plaintiff stated that he did not see it.

{¶6}    Plaintiff testified that inasmuch as the southbound lane appeared to be unobstructed, he believed he could simply pass to the left of the sand and continue on his way.  However, both lanes of travel were closed at that point, with the closure of the southbound lane being effected by a steel cable strung from a pole at the center line of the roadway to another pole on the berm of the southbound lane.  Several orange ribbons were tied to the cable.  Additionally, the pole at the center line of the roadway had a sign affixed to it which read "no passing on the left."

{¶7} Although plaintiff has no recollection of the crash, the evidence demonstrates that as the motorcycle approached the closure, it fell onto its left side due to either hard braking or plaintiff defensively laying the motorcycle down. The motorcycle then slid through the sand, barricade, and center line pole, and came to rest in the southbound lane. Plaintiff stated that once he regained consciousness, he telephoned his son, Christopher Cox, for assistance.

{¶8} Christopher Cox was driving to plaintiff's home for dinner, along with his wife Teri and their infant son, when he received plaintiff's call. Christopher then drove to the scene by heading south on County Road 62, and turning left onto State Route 124. Christopher testified that he saw no signs stating that State Route 124 was closed. Teri testified that she saw a "road closed" sign near the intersection of County Road 62 and State Route 124, but that the sign was positioned "at a confusing angle" several feet from the roadway, in the front yard of a home, such that she was not sure which road or direction the sign pertained to.

{¶9} Christopher testified that when he and Teri arrived at the scene, plaintiff was incoherent. According to Christopher, several area residents and other persons who were picnicking or camping along the river had gathered around the wreckage, and an ambulance and an Ohio State Highway Patrol (OSHP) trooper arrived soon afterward. Teri telephoned her parents, Edwin and Lois Porter, and asked them to bring a trailer in order to retrieve the motorcycle.

{¶10} Edwin Porter testified that he drove his pickup truck and trailer south on County Road 62 and turned left onto State Route 124, during which time he saw no signs warning of the closure. Lois Porter, who was a passenger in the truck, testified that she saw a sign a few feet from the pavement at the County Road 62/State Route 124 intersection, but that it was situated such that she could not discern what it said.

{¶11} Trooper Steven Daugherty of the OSHP testified by way of deposition that he arrived at the scene of the crash at 4:38 p.m. Daugherty stated that he approached

the scene via State Route 124, and that by the time he traversed the intersection with County Road 62, about 40 minutes after plaintiff passed through, a "road closed" sign similar to the one described by other witnesses was "in the middle of" State Route 124, partially blocking both lanes such that he had to maneuver his patrol car around it. After briefly interviewing plaintiff, who was then transported by ambulance to a local hospital, Daugherty investigated the crash and compiled a report. (Plaintiffs' Exhibit 10.) As a result, Daugherty issued plaintiff a citation for failure to control a motor vehicle, to which plaintiff pleaded guilty and paid a fine.

{¶12} At trial, each of the parties presented the testimony of crash reconstruction experts. Plaintiffs' expert, Jack Holland, testified that the OSHP report establishes that the barricade was visible from plaintiff's lane of travel at a distance of 750 feet. Holland testified that plaintiff had a sufficient distance in which to stop his motorcycle by simply applying normal braking technique. According to Holland, though, the photographs included in the OSHP report appear to show that plaintiff "laid the motorcycle down" as a defensive maneuver after perceiving a hazard when he was 156 feet from the barricade. Holland opined that the grooves and other marks in the OSHP photographs show that when the motorcycle came down upon its side, plaintiff was traveling approximately 40 miles per hour and was steering the motorcycle to the left, as if to pass to the left of the sand and barricade. Holland acknowledged, however, that when plaintiff approached the sand and barricade, these obstructions would have blocked his line of sight and prevented him from knowing whether his lane of travel was passable beyond that point.

{¶13} Defendant's expert, Henry Lipian, opined that tire deceleration marks and grooves in the pavement which are visible in the OSHP photographs demonstrate that plaintiff probably did not intentionally lay the motorcycle down, and that it instead fell over on its left side as a result of heavy braking. According to Lipian, plaintiff perceived the need to stop when he was only about 125 feet from the closure, at which time he

was traveling at least 40 miles per hour, if not slightly faster.  In contrast to Holland's opinion that plaintiff intended to steer around the sand pile and barricade, Lipian stated that the pavement grooves depicted in the OSHP photographs show that the motorcycle was headed straight toward those obstructions and that it only careened into the southbound lane as a result of striking the sand.

{¶14}  In order to prevail upon his claim of negligence, plaintiff must prove by a preponderance of the evidence that defendant owed him a duty, that defendant's acts or omissions resulted in a breach of that duty, and that the breach proximately caused his injuries.  *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 81, 2003-Ohio-2573, citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77.

{¶15}  It is well-settled that defendant is subject to a general duty to exercise ordinary, reasonable care in maintaining state highways.  *White v. Ohio Dept. of Transp.* (1990), 56 Ohio St.3d 39, 42.  However, defendant is not liable for damages caused by dangerous conditions on state highways unless it has actual or constructive notice of the condition.  *McClellan v. Ohio Dept. of Transp.* (1986), 34 Ohio App.3d 247, 249.  "In order for there to be constructive notice of a nuisance or defect in the highway, it must have existed for such length of time as to impute knowledge or notice."  Id. at 250.

{¶16}  Additionally, the common law of Ohio also imposes a duty of reasonable care upon motorists, which includes the responsibility to observe the environment in which one is driving.  *Hubner v. Sigall* (1988), 47 Ohio App.3d 15, 17.

{¶17}  On June 10, 2010, defendant filed a stipulation admitting both that it owed plaintiff a duty and that it committed a breach of such duty, but the stipulation did not specify the nature of either the duty or the breach.

{¶18}  Regarding signage at the intersection of State Route 124 and County Road 62, the evidence demonstrates that defendant installed a "road closed" sign affixed to a mobile barricade, but that at some point prior to the time when plaintiff traversed the intersection, the device became situated out of place, in the front yard of a

home, several feet from the roadway, and at an angle such that its message was unintelligible to those traveling northbound on State Route 124. However, the evidence does not establish how long the device had been situated in this manner. Upon review, the court finds no evidence to support the conclusion that defendant had actual or constructive notice of this dangerous condition.

{¶19} However, to the extent that the Ohio Manual of Uniform Traffic Control Devices provides that "road closed" signs "shall be preceded" by a "road closed ahead" sign, defendant was negligent in failing to install any such sign in advance of the State Route 124/County Road 62 intersection. (Plaintiff's Exhibit 16.)

{¶20} The court thus finds that defendant committed a breach of its duty with regard to the lack of signage in advance of the "road closed" sign, but not with regard to the "road closed" sign that was out of place. The court also finds, however, that plaintiff committed a breach of his duty to observe the roadway. Moreover, the court is persuaded that plaintiff's inattentiveness was the sole proximate cause of his injuries.

{¶21} Plaintiff admitted both that he opted to travel on State Route 124 because he knew that it was a scenic route, and that he was indeed looking at the Ohio River and other scenery just before the crash. Even though the crash occurred at 4:00 p.m. on a sunny, summer afternoon with no adverse weather conditions, plaintiff testified that he failed to see the large orange and white barricade blocking his lane of travel. Instead, plaintiff stated that he only saw the pile of sand which was underneath or in front of the barricade, and that he believed he could simply steer around the sand.

{¶22} However, the court finds that plaintiff's lane of travel afforded a view of the barricade from 750 feet away, and both experts agreed that plaintiff had ample distance to stop the motorcycle with normal braking. Plaintiff's expert opined, though, that plaintiff perceived a need to stop or take other defensive action at a distance of just 156 feet from the closure. According to defendant's expert, plaintiff made this perception even later, when he was a mere 125 feet from the closure.

{¶23}  Although plaintiff's expert opined that plaintiff probably intended to pass to the left of the obstructions in his lane until perceiving that the southbound lane was also obstructed, the court finds defendant's expert to be more persuasive in opining that plaintiff's path of travel was directly toward the sand and barricade and that the motorcycle came to rest in the southbound lane only as a result of colliding with the sand and thereby being diverted into that lane.  Inasmuch as the barricade was a reasonably discernable, stationary object in plaintiff's path of travel and did not suddenly appear, the court finds that plaintiff was negligent in failing to maintain an assured clear distance ahead.  See R.C. 4511.21(A); *Sauer v. Crews*, Franklin App. No. 10AP-834, 2011-Ohio-3310, ¶17.  Further, even if plaintiff had been attempting to maneuver around the sand and barricade, both experts stated that plaintiff was traveling about 40 miles per hour, and the court finds this to be an unreasonable speed at which to approach such obstructions, which spanned across plaintiff's lane and obscured his view of the roadway beyond.

{¶24}  Based upon the foregoing, the court concludes that plaintiff failed to prove his negligence claim by a preponderance of the evidence and, therefore, the derivative claims for loss of consortium also must fail.  See *Bowen v. Kil-Kare, Inc.* (1992), 63 Ohio St.3d 84, 93.  Accordingly, judgment shall be rendered in favor of defendant.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

SANFORD W. "BILL" COX, et al.

    Plaintiffs

    v.

OHIO DEPARTMENT OF TRANSPORTATION

    Defendant
    Case No. 2009-07342

Judge Clark B. Weaver Sr.

<u>JUDGMENT ENTRY</u>

{¶25} This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiffs. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
CLARK B. WEAVER SR.

Judge

cc:

Emily M. Simmons
Eric A. Walker
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Jessica Olsheski
Timothy J. Boone
1654 East Broad Street, 2nd Floor
Columbus, Ohio 43203

RCV/dms
Filed August 9, 2011
To S.C. reporter September 22, 2011