[Cite as *State v. Link*, 2018-Ohio-1730.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,               :

    Plaintiff-Appellee,      :        Case No. 17CA3602

v.                           :

                                  DECISION AND
JASON TIMOTHY LINK,          :        JUDGMENT ENTRY

    Defendant-Appellant.     :        RELEASED 05/02/2018

---

## APPEARANCES:

Jason Timothy Link, Chillicothe, Ohio, *pro se* Appellant.

Sherri K. Rutherford, City of Chillicothe Law Director, and Carrie L. Charles, City of
Chillicothe Assistant Law Director, Chillicothe, Ohio, for Appellee.

---

Hoover, P.J.

{¶1}    Defendant-appellant, Jason Timothy Link ("Link"), appeals from a judgment of

conviction entered by the Chillicothe Municipal Court pursuant to a bench verdict finding Link

guilty of disobeying the instructions of a traffic control device while driving a vehicle. For the

reasons that follow, we reverse the judgment of the trial court.

**I. Facts and Procedural History**

{¶2}    On May 12, 2017, Link was stopped for allegedly running a stop sign at the

intersection of Polk Hollow Road and US-50 in Ross County, Ohio. Link was cited for

disobeying the instructions of a traffic control device, i.e., a stop sign, while driving a vehicle, in

violation of R.C. 4511.12. The roadway on which Link was operating his vehicle, Polk Hollow

Road, was marked with a stop sign but did not have a marked "stop bar" or "crosswalk". The stop sign is set back from the intersection by approximately 28 feet.

{¶3}    At a bench trial, Trooper Efaw with the Ohio State Highway Patrol and Link apparently provided conflicting testimony as to whether Link stopped at the stop sign. Because the full transcript was not ordered, the record on appeal does not contain a transcript of Efaw or Link's exact testimony. A dashcam video from Trooper Efaw's cruiser was also played for the trial court. The dashcam video was also not provided with the appellate record.

{¶4}    At the conclusion of the bench trial the trial court found Link guilty, noting as follows[1]:

COURT: Alright, we're back on the record in Case TRD1703962, the State against Jason Link. I've had a chance to review the video a few more times to try to see if it's any better indication of what it shows, and frankly I can't tell for sure much more than what I've already seen. It does appear that the stop sign is back a little ways from the intersection and I'll accept your measurement, Mr. Link, that it's 28 feet. Looks like to be about that far in the video. I don't see a cross walk or a stop bar anywhere marked on the roadway, and it does appear that your car is moving before the stop sign. If you stopped, you didn't stop right at the stop sign, but I can't tell more than a few feet before the stop sign what your car is doing from the video. So, and I can't tell how far the officer saw before the stop sign either, because I don't think she testified to that. She just said that she saw the car rolling up through the stop sign and making a turn, which it does. So I think it's possible that you stopped and I suspect you probably did because I don't think

_____

[1] The following ruling was provided in the partial transcript transmitted on appeal.

you'd lie to me about it. I won't say I've never heard a lie in the court room before. Alright, so the charge here is a charge of violating a traffic control device in violation of 4511.12, which seems like an odd charge to start with, but that section simply says, "no pedestrian, driver of a vehicle, operator of a streetcar or trackless trolley shall disobey the instruction of any traffic control device placed in accordance with this chapter unless at the time otherwise directed by a police officer." So I assume we're talking about a stop sign and then there is a section of the law that deals with stop signs, which is 4511.43 which says, "except when directed to proceed by a law enforcement officer, every driver of a vehicle or trackless trolley approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the cross walk on either side of the intersection or if none, at the point nearest the intersection roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After having stopped, the driver shall yield the right of way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time the driver is moving across within the intersection or junction of roadways." Frankly, Mr. Link, you're probably in violation of that, technically in violation of that statute because, although the language is a little bit confusing, it says you must stop at the point nearest the intersecting roadway where you have a view of approaching traffic, which means I guess you would have to pull right up the edge and stop there before going. Clearly, you didn't do that. You stopped back prior to the stop sign and if you did that though, you didn't have a clear view of traffic. I'm not sure why the law would require you to stop again, but

apparently that's the way the statute is written. So, I guess I have to find you guilty on the charge and I do. But given the situation, I'm not going to impose a fine and in fact, I'll even waive the court costs because I believe that you likely did stop, even though it was a ways, at least 30 feet back from the intersection.

* * *

MR. LINK: With all due respect, obviously you know the law much better than I do. If the law states that you have to have a clear sight line, Polk Hollow Road, is not a road that I travel all that frequently, but there's a very clear sight line at the stop sign to the left. You can see at least a quarter of a mile down the road. If there's no stop line, if there's no cross walk, I'm not sure how the new charge that you're charging me with comes into play[?]

COURT: Well, I guess you're going to quibble with me on that and that's fine. I'm not charging you with a new charge. I am interpreting the charge that you were charged with. You know, I'm interpreting it in the way that the statute is written with respect to stop signs because I find that the stop sign is a traffic control device and specifically, when you stop for a stop sign, you're required to stop at the stop bar, the cross walk, or if those aren't there, at a point nearest the intersection. You didn't. You stopped at least 30 feet before the intersection.

MR. LINK: So, what would the point nearest the intersection be?

COURT: Well, that's a good question. And it's not specified in the statute.

MR. LINK: And that's why I'm asking the questions I'm asking because I'm trying to understand why I'm being charged with something, Number 1 other than what I was charged with by the trooper, and Number 2 trying to understand why you're charging me with that when it's not clear and understandable even to yourself, as you've admitted, what the statute really says or doesn't say.

COURT: Well, I think if you had stopped within a few feet or 10 feet of the intersection, I'd say that's fine. But you stopped at least two car lengths before the intersection.

MR. LINK: I stopped at the stop sign, which is where I always

COURT: No, you didn't stop at the stop sign. You stopped before the stop sign. Because I can see on the video that, I can't judge the distance specifically, but there is a gap between where I can first see your car and the stop sign and your car is moving when I first see it. I can see it moving coming to the stop sign, passing the stop sign, and going out. So, you didn't stop right at the stop sign. You stopped prior to the stop sign and I can't say whether it was 3 feet, 5 feet, 6 feet, or 10 feet. But it was before the stop sign, so you're at least 30 feet from the intersection, if your measurement is correct. If it's 28 feet to the stop sign, you're at least 30 feet before the intersection. You know, obviously you disagree with my decision. That's fine. Frankly, I sort of, I don't like the decision I'm making, but I don't know how else to interpret the statute. I don't think 30 feet is the point nearest the intersection to stop. So technically, as I said, you violated the statute, but taking all that into consideration, as I said, I'm not going to impose a fine. I'll

waive the court costs. So you won't owe anything, but I guess you will get a

conviction on your record. * * *

Link then filed this appeal.

## II. Assignments of Error

{¶5}   Link, appearing *pro se*, assigns the following errors for our review:

Assignment of Error I:

There was no audio available for the dashcam video provided by the State during the trial.

Assignment of Error II:

Lack of clear evidence of guilt.

Assignment of Error III:

Application of a different section of the legal code in finding guilt, then defendant was charged with.

Assignment of Error IV:

Verdict of guilty rendered, with fines and court costs being waived.

## III. Law and Analysis

{¶6}   Because determination of Link's third assignment of error is dispositive of this

case, we address the assignments of error out of order. In his third assignment of error, Link

essentially contends that the trial court erred in finding him guilty of disobeying the instructions

of a traffic control device even though it also determined that he had stopped at or just prior to

the stop sign. We construe this assignment of error as a challenge to the trial court's

interpretation of the revised code.

{¶7}     Generally, the interpretation of a statute involves a purely legal question. Thus, an appellate court will conduct a de novo review of a trial court's judgment interpreting a statute and will afford no deference whatsoever to a trial court's interpretation. *Oliver v. Johnson*, 4th Dist. Jackson No. 06CA16, 2007-Ohio-5880, ¶ 5. "The primary goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute." *State v. Lowe,* 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 9. "If the meaning of a statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.,* 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996). But, if a statute is ambiguous, "further interpretation is necessary." *State v. Chappell,* 127 Ohio St.3d 376, 2010-Ohio-5991, 939 N.E.2d 1234, ¶ 16. A statute is ambiguous if its language is susceptible to more than one reasonable interpretation. *See State ex rel. Toledo Edison Co. v. Clyde,* 76 Ohio St.3d 508, 513, 668 N.E.2d 498 (1996).

{¶8}     "Only if a statute is unclear and ambiguous, may we interpret it to determine the legislature's intent." *State v. Thornsbury*, 4th Dist. Lawrence No. 12CA9, 2013-Ohio-1914, ¶ 8. R.C. 1.49 provides that if a statute is ambiguous, in determining the intention of the legislature, we "may consider among other matters: (A) The object sought to be attained; (B) The circumstances under which the statute was enacted; (C) The legislative history; (D) The common law or former statutory provisions, including laws upon the same or similar subjects; (E) The consequences of a particular construction; [and] (F) The administrative construction of the statute." Under R.C. 1.42, we must read words and phrases in context and construe them according to the rules of grammar and common usage unless they have acquired a technical or particular meaning.

{¶9}    Link was charged with violating R.C. 4511.12(A), which provides that no driver of a vehicle "shall disobey the instructions of any traffic control device placed in accordance with [R.C. Chapter 4511], unless at the time otherwise directed by a police officer." Here, the device was a stop sign, and R.C. 4511.43(A) contains the instructions for it that the trial court concluded Link did not follow. R.C. 4511.43(A) states:

> Except when directed to proceed by a law enforcement officer, every driver of a vehicle or trackless trolley approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After having stopped, the driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection or junction of roadways.

{¶10}   The trial court specifically found that there was no "stop bar" or "crosswalk" on the roadway, but that Link disobeyed the instructions of a traffic control device, i.e., a stop sign, because he failed to stop at the point nearest the intersecting roadway.

{¶11}   There is little guidance available regarding the common, ordinary, and accepted meaning of what it means to stop "at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it." A review by this writing judge reveals no published case law from the Ohio Supreme Court or any other Ohio court addressing the proper interpretation of what it means to stop at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting

roadway. A cursory reading of the language can mean a multitude of things depending on the reader. Accordingly, we conclude that R.C. 4511.43(A)'s requirement that a motorist stop "at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it" is reasonably susceptible to more than one interpretation.

{¶12}  Because we conclude that the statute is unclear and ambiguous, we must apply the principles of statutory interpretation to determine what R.C. 4511.43(A) requires of a motorist when a stop sign is not accompanied by a marked stop line or crosswalk. To determine the General Assembly's legislative intent, we will consider the consequences of a particular construction of the statute, and the object sought to be obtained by the statute. R.C. 1.49(A) and (E).

{¶13}  We conclude that the General Assembly did not intend that motorists stopping well past the marked stop sign and at the point nearest the intersection would constitute compliance with R.C. 4511.43(A). Rather, we hold that when the stop sign is not accompanied by a marked stop line or crosswalk, the motorist must stop his or her vehicle at the point nearest the stop sign where they have a clear view of approaching traffic on the intersecting roadway.

{¶14}  First, if we were to interpret the statute to require a motorist to stop numerous feet past the stop sign and at the brink of the intersection, the consequence would be to put many motorists and pedestrians in perilous situations. Stopping so close to the intersection could make for unsafe road conditions. It is illogical that the General Assembly would want to establish a stopping point for a motorist that would put them, pedestrians, and other motorists in danger.

{¶15}  "[T]he object sought to be attained in regulating Ohio's [roadways] is the safety of motorists and pedestrians" *State v. Miller*, 3d Dist. Marion No. 9-14-50, 2015-Ohio-3529, ¶

22. As previously discussed, interpreting R.C. 4511.43(A) to permit motorists to stop well past a marked stop sign and at the verge of an intersecting roadway does not further that purpose. "[T]he purpose of a stop-sign statute is 'to require a vehicle to stop before it is in position where it could impede or hit pedestrians who might be in a crosswalk, or cross-traffic that could be in an intersection.' " *Id*., quoting *State v. Daniels*, 158 So.3d 629, 631 (Fla.2014). Stop signs are also commonly used to protect other motorists by providing a stopping point at which a vehicle must stop to allow ample room for large vehicles to complete turns at an intersection. *Id*. Accordingly, we believe our interpretation of R.C. 4511.43(A) most readily furthers the General Assembly's purpose in enacting the statute.

{¶16}  Again, we conclude that when the stop sign is not accompanied by a marked stop line or crosswalk, the motorist must stop his or her vehicle at the point nearest the stop sign where they have a clear view of approaching traffic on the intersecting roadway.

{¶17}  Based on that conclusion, we hold that the trial court erred in finding that Link was required to stop well past the stop sign and at the point nearest the intersection. And because the trial court found that Link stopped at or just behind the stop sign, we further conclude that Link did not violate R.C. 4511.12 or R.C. 4511.43.

{¶18}  We further note that even if our interpretation of the statute is erroneous, Link still cannot be held criminally liable of violating R.C. 4511.12 because the stop sign at issue was not properly placed.

{¶19}  R.C. 4511.11(D) requires all traffic control devices to conform to the Ohio Manual of Uniform Traffic Control Devices (hereinafter the "OMUTCD"). R.C. 4511.12 prohibits enforcement of an alleged traffic violation "if at the time and place of the alleged violation an official sign is not in proper position and sufficiently legible to be seen by an

ordinary observant person." Thus, R.C. 4511.12 "creates a legal excuse for the criminal violation." *White v. Ohio Dept. of Transp.*, 56 Ohio St.3d 39, 43, 564 N.E.2d 462 (1990). The section of the OMUTCD dealing with the proper placement of stop signs states that "the STOP or YIELD sign shall be located as close as practical to the intersection it regulates * * *." OMUTCD, Section 2B.10 (2012 Ed.).

{¶20}   Here the trial court determined that the stop sign was placed approximately 28 feet from the intersection it regulates. Even though Link stopped at or just prior to the stop sign, the trial court found that he should have stopped within 3 to 10 feet of the intersection in order to comply with R.C. 4511.12 and 4511.43(A). Thus, if the trial court's interpretation of the statute is correct, the stop sign at issue in this case should have been placed much closer to the intersection in order to conform to the OMUTCD. It does not appear from the limited record on appeal that the stop sign could not have been placed much closer to the intersection. Under these particular circumstances, the traffic control laws could not be enforced against Link.

{¶21}   Having interpreted the relevant statutes, and considered the factual findings of the trial court, it is clear that Link did not disobey a traffic control device, or alternatively, should not be held criminally liable for disobeying a traffic control device because of the improper placement of the device. Therefore, we sustain Link's third assignment of error. Link's remaining assignments of error are rendered moot. *See* App.R. 12(A)(1)(c).

### IV. Conclusion

{¶22}   Having sustained Link's third assignment of error, the judgment of the trial court is reversed. We further remand this matter to the trial court with instructions to enter a verdict of not guilty.

JUDGMENT REVERSED AND CAUSE REMANDED.

Harsha, J., concurring in judgment only:

{¶23} I agree that the trial court erroneously convicted Mr. Link but base my vote to reverse upon finding merit in Link's second assignment of error.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS REVERSED AND THIS CAUSE IS REMANDED for further proceedings consistent with this opinion. Appellee shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J.: Concurs in Judgment Only with Opinion.
McFarland, J.: Dissents.


For the Court


By: _____
        Marie Hoover, Presiding Judge




**NOTICE TO COUNSEL**


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**