OPINION
{¶ 1} Alexandre Malikov was convicted of speeding, in violation of Village of St. Paris Ordinance 73.10, after a bench trial in the Champaign County Municipal Court. The court fined him $150 and ordered him to pay court costs. Malikov appeals from his conviction, asserting that his conviction was based on insufficient evidence and against the manifest weight of the evidence. He also asserts that the trial court altered *Page 2 
the charge during its deliberations. For the following reasons, Malikov's conviction will be reversed.
 {¶ 2} The state's evidence at trial consisted of the testimony of St. Paris Police Officer Andrew Ervin. Ervin testified that on October 17, 2006, he was on-duty in his cruiser in the parking lot of Family Dollar, located at 701 East Main Street, about a quarter mile within the eastern limits of St. Paris, Ohio. Outside of the limits of St. Paris, the speed limit on State Route 36, which becomes East Main Street, was 55 mph. Within St. Paris, the speed limit on East Main Street was 35 mph.
 {¶ 3} At approximately 9:40 p.m., Ervin observed Malikov's semi tractor-trailer pass him, traveling westbound on East Main Street. Based on his visual observation, Ervin believed that Malikov was speeding. When Malikov was approximately 30 yards west of Ervin's location, Ervin activated his front radar and observed that Malikov was traveling 44 mph. Ervin testified that he had calibrated the radar before he began his patrol and that he checked the calibration again at the end of his shift. After using the radar, Ervin activated the lights on his cruiser and pulled Malikov over. Malikov had traveled about one additional block to just past a railroad crossing. After he stopped, Malikov exited his truck and told Ervin that the signs for the speed limits were not far enough away from the village to give him adequate time to slow down. Ervin returned to his cruiser and wrote a citation for speeding in a 35 mph zone. Ervin testified at trial that he believed there was a "reduced speed ahead" sign prior to entering St. Paris on westbound S.R. 36. However, on cross-examination, Ervin did not see a "reduced speed ahead" sign in photos taken of westbound S.R. 36, which were presented by defense counsel. *Page 3 
 {¶ 4} Malikov testified in his own defense. According to his testimony, he has been a commercial truck driver for a total of approximately fifteen years. At approximately 9:30 p.m. on October 17, 2006, he was traveling westbound on S.R. 36 in his semi tractor-trailer. At that time, it was dark and raining. Malikov's trailer was empty, as he was heading to Sidney to pick up his load. Malikov testified that truck drivers need to be careful on slippery surfaces, because the tires may lock when braking and the driver may lose control of the truck, which may skid or jackknife. He also indicated that tractor-trailers take longer to stop when they are empty, because there is poor traction and it is very easy to lock up the wheels. Malikov testified that his tractor-trailer did not have an anti-lock braking system.
 {¶ 5} Malikov testified that he traveled through St. Paris for the first time on October 17, 2006. When he drove eastbound through St. Paris on his delivery to Urbana, he had noticed that the speed limit was 55 mph, he had seen a "reduced speed ahead," and then he saw the speed limit was 35 mph. When Malikov approached St. Paris on westbound S.R. 36 later that day, he was traveling approximately 55 mph. He testified that he had been expecting to see the same warning sign prior to the 35 mph zone. He stated: "And I see first 55, and all of a sudden the next one was 35. * * * Neither 45, nor reduced speed limit ahead. 55, next one 35."
 {¶ 6} Malikov indicated that he saw the 35 mph sign when he was approximately 75 feet away from it. He first applied the brakes lightly and then "started steadily applying again and again and again." Malikov indicated that he was below 35 mph when he reached the railroad tracks, which were 539 feet from the 35 mph sign. *Page 4 
 {¶ 7} At the conclusion of trial, the court found Malikov guilty of speeding. The trial court stated:
 {¶ 8} "[T]he Court is going to find that the State has met their burden of proving you guilty beyond a reasonable doubt. Part of the reason is what your own statements were, that, you know, you didn't think that there was enough distance to even slow down. That's a concern to the Court.
 {¶ 9} "You testified that your truck was empty and that it takes a longer time period to slow down with an empty truck. Your own attorney said how frightening that was to him. You said that it was raining and you're still going just as fast as you can go, assuming that your testimony is accurate and correct.
 {¶ 10} "Nevertheless, you're testifying that you're pushing the limits on the 55. So when you can't get slowed down for a village, which by state law says it should be 35 miles per hour, the Court is going to find that that certainly is not reasonable and not proper for you to have done that, for you to be speeding."
 {¶ 11} Malikov appeals from his conviction, raising three assignments of error.
 {¶ 12} I. "IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO NOT DISMISS THE CHARGE, AS THE STATE DID NOT PRESENT SUFFICIENT EVIDENCE TO PROVE GUILTY BEYOND A REASONABLE DOUBT."
 {¶ 13} II. "IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO ENTER A FINDING OF GUILTY AS THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 14} In his first and second assignments of error, Malikov claims that his conviction was based on insufficient evidence and was against the manifest weight of *Page 5 
the evidence.
 {¶ 15} When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v.Dennis, 79 Ohio St.3d 421, 430, 1997-Ohio-372, 683 N.E.2d 1096, citingJackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d. 560. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 16} In contrast, when a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." Id. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional *Page 6 
circumstances. Martin, 20 Ohio App.3d at 175.
 {¶ 17} The Village of St. Paris Ordinance 73.10, which is similar to R.C. 4511.21, provides in relevant part:
 {¶ 18} "(A) No person shall operate a motor vehicle at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions * * *.
 {¶ 19} "(B) It is prima-facie lawful, in the absence of a lower limit declared pursuant to this section by the director of transportation or local authorities, for the operator of a motor vehicle * * * to operate the same at a speed not exceeding the following:
 {¶ 20} "(3) Thirty-five miles per hour on all state routes or through highways within the municipal corporation outside business districts, * * *
 {¶ 21} "(5) Fifty-five miles per hour on state routes outside urban districts unless a lower prima facie speed is established as further provided in this section[.]
 {¶ 22} "Where a municipal ordinance makes it prima facie unlawful for a motor vehicle to exceed a certain speed limit in a described locality, a speed greater than that specified does not establish the commission of an offense or constitute unlawful conduct per se, but establishes only a prima facie case under the ordinance. Such a provision as to speed is merely a rule of evidence raising a rebuttable presumption which may be overcome by evidence showing that in the circumstances the speed was neither excessive nor unreasonable." Cleveland v. Keah (1952),157 Ohio St. 331, 105 N.E.2d 402; Village of Bellville v. Kieffaber,114 Ohio St.3d 124, 2007-Ohio-3763, 870 N.E.2d 697, ¶ 17. *Page 7 
 {¶ 23} Here, the state presented evidence that Malikov was driving an empty tractor-trailer at 44 mph in a 35 mph zone within the limits of St. Paris. Malikov's evidence indicated that it took a longer period of time to stop an empty tractor-trailer and that slippery surfaces required extra care. It is undisputed that it was dark and raining when Ervin stopped Malikov for speeding. Construing the evidence in the light most favorable to the state, there was sufficient evidence from which the trial court could reasonably conclude that Malikov's speed of 44 mph was not reasonable or proper within the Village limits.
 {¶ 24} The first assignment of error is overruled.
 {¶ 25} Malikov contends that his speed was reasonable and proper, considering all of the circumstances, because there was no "reduced speed ahead" sign warning him of the transition to 35 mph and he took reasonable steps to safely reduce his speed. Malikov argues that the Ohio Manual for Uniform Traffic Control Devices ("OMUTCD"), 2005 edition, required the placement of a sign warning of a change in speed from 55 mph to 35 mph to be placed 225 feet before the change in speed. In light of the lack of the alleged required sign, Malikov asserts that he cannot be held criminally liable for failing to comply with the requirements of the 35 mph speed zone. As summarized in his reply brief, Malikov's argument is based on "the failure of the signage to comply with the requirements of the OMUTCD and the physical impossibility of complying with the prima facie speed limit this failure caused."
 {¶ 26} "The Ohio Manual of Uniform Traffic Control Devices for Streets and Highways (`MUTCD') has been adopted as the state's official specifications for highway signs and markings pursuant to R.C. 4511.09. R.C. 4511.10 requires ODOT *Page 8 
[Ohio Department of Transportation] to comply with the MUTCD in erecting and maintaining highway signs and markings." White v. Ohio Dept. ofTransportation (1990), 56 Ohio St.3d 39, 41, 564 N.E.2d 462. The OMUTCD is accorded the force of law, Woods v. City of Beavercreak (Apr. 11, 1989), Greene App. No. 88-CA-38, and numerous cases have held that a defendant cannot be held criminally liable for failing to comply with a traffic control device, such as a sign, where the device did not conform to the requirements of the OMUTCD. E.g., State v. Grillot (1964),2 Ohio App.2d 81, 206 N.E.2d 420 (conviction reversed where motorist "produced ample evidence showing that he was in a position of violation before he could effectively read the command of the ["maintenance and emergency vehicles only"] sign."); City of Mentor v. Mills (July 22, 1988), Lake App. No. 12-269 (conviction for speeding reversed, in part, due to evidence that speed limit signs were not properly placed); City ofCincinnati v. Evers (1993), 63 Ohio Misc.2d 220, 621 N.E.2d 905 (no criminal liability where "no left-hand turn" sign did not conform to OMUTCD).
 {¶ 27} Section 2C.30 of the OMUTCD governs speed reduction signs. It states:
 {¶ 28} "Guidance:
 {¶ 29} "A Speed Reduction (W3-5 or W3-5a) sign (see Figure 2C-5) should be used to inform road users of a reduced speed zone when engineering judgment indicates the need for advance notice to comply with the posted speed limit ahead.
 {¶ 30} "Standard:
 {¶ 31} "If used, Speed Reduction signs shall be followed by a SpeedLimit (R2-1) sign installed at the beginning of the zone where the speedlimit applies.
 {¶ 32} "The speed limit displayed on the Speed Reduction sign shallbe *Page 9 identical to the speed limit displayed on the subsequent Speed Limitsign." (Emphasis sic).
 {¶ 33} Section 2C.05 discusses the placement of warning signs, if used. It states that "[w]arning signs should be placed so that they can provide adequate PIEV [perception, identification (understanding), emotion (decision making), and volition (execution of decision)] time." Table 2C-4, which Malikov has attached to his brief, provides guidelines for the suggested placement for warning signs. In accordance with that table, a speed reduction sign indicating a decrease in speed from 55 mph to 30 mph[1] would need to be placed 175 feet before the 30 mph zone; a sign warning of a reduction in speed from 55 mph to 40 mph would need to be placed 100 feet before the 40 mph zone. Both distances assume that the warning sign will be legible from a distance of 250 feet. Taking the average of these two distances, a sign warning of a reduction in speed from 55 mph to 35 mph, if erected, would provide approximately 388 (138 + 250) feet of notice of the new speed zone before the 35 mph speed zone.
 {¶ 34} Malikov presented substantial evidence of the lack of a "reduced speed ahead" warning sign on westbound S.R.36 in the form of five photos taken from various distances east of the 35 mph zone sign. Ervin testified that one of the photos showed about one-quarter of a mile from the St. Paris limit. None of the photos revealed a sign warning of a reduction in speed. Although Ervin testified that he believed a warning sign was present on westbound S.R. 36, the photographs *Page 10 
constitute compelling evidence otherwise.
 {¶ 35} Although the evidence indicates that there was no "reduced speed ahead" warning sign on westbound S.R. 36, the OMUTCD did not require a warning sign. Rather, the guidelines for placement applied only if "engineering judgment" determined a sign was warranted. Accordingly, Malikov cannot rely on non-compliant signage as a basis for excusing his violation, nor are the cases he cited pertinent to this case.
 {¶ 36} The crucial question, therefore, is whether the 35 mph sign itself provided sufficient notice to Malikov. Using the OMUTCD estimate of rate of deceleration of 10ft/sec,[2] Malikov estimated that it would take a vehicle just over 193 feet to decelerate from 55 mph to 35 mph, plus approximately 201 feet to react to the warning sign. Thus, he asserted that it would take approximately 395 feet to slow a vehicle 20 miles per hour once the sign is observed. These calculations appear to be accurate when using the OMUTCD deceleration rate and reaction time (2.5 seconds).
 {¶ 37} In light of the absence of a "reduced speed ahead" warning sign, Malikov testified that he observed the 35 mph speed zone sign approximately 75 feet before entering St. Paris. He testified that he could not safely reduce his speed to 35 mph before entering the zone, and the OMUTCD supports his testimony. Based on the evidence presented, Malikov clearly did not have sufficient time to reduce his speed from 55 mph to 35 mph prior to entering the St. Paris limits. Malikov's undisputed testimony was that he was braking as safely as possible given his notice of the reduced limit, and that he was able to reach a speed below 35 mph by the time he reached the railroads tracks, which was just over a tenth of a mile within the St. Paris *Page 11 
limits. ln our view, considering all of the evidence presented at trial, Malikov's speed was reasonable and proper, given the limited notice of the 35 mph speed zone. Accordingly, his conviction was against the manifest weight of the evidence.
 {¶ 38} The second assignment of error is sustained.
 {¶ 39} III. "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN, DURING DELIBERATIONS, IT SUBSTITUTED THE CHARGE OF FAILING TO DRIVE AT A REASONABLE AND PROPER SPEED IN A 55MPH ZONE FOR THE CHARGED OFFENSE OF FAILING TO DRIVE AT A REASONABLE AND PROPER SPEED IN THE 35MPH ZONE."
 {¶ 40} Given our disposition of the second assignment of error, the third assignment of error is overruled as moot.
 {¶ 41} The judgment of the trial court will be reversed.
BROGAN, J. and GRADY, J., concur.
[1] The table indicates the recommended advance placement distance for a decrease in speed to 0, 10, 20, 30, 40, 50, 60, or 70 mph. The table does not specifically identify the recommended advance placement location for a reduction in speed from 55 mph to 35 mph. *Page 1