The STATE of Ohio

v.

TOBIN.

2008-Ohio-3466.]

Athens County Municipal Court, Ohio.

No. 2008TRC00555(1)(2)(3).

Decided April 24, 2008.

Lisa A. Eliason, Athens City Prosecuting Attorney, for plaintiff.

Patrick C. McGee, for defendant.

---

GRIM, Judge.

{¶ 1} This matter came on for evidentiary hearing April 7, 2008, upon defendant's motion to suppress. Defendant was present with his attorney, Patrick C. McGee. The state of Ohio was represented by Lisa A. Eliason, Athens City Prosecutor. This case was combined for the purpose of evidence and argument on the motion to suppress with *State v. Goergen*, Athens County M.C. No. 2008TRC0159(1)(2)(3), as both cases raise the same issue as to reasonable grounds for the traffic stop for violating the applicable speed limit. However, the facts in each case are slightly different, and the court will therefore issue separate decisions.

## FACTS

{¶ 2} The city of Athens is located at the junction of two major highways: U.S. Route 33, which generally runs from north to south, and U.S. Route 50/Ohio Route 32, which generally runs from east to west. Several years ago, these highways were made controlled-access expressways and rerouted from the center of Athens. For approximately two miles in or around the city of Athens, these two routes run together.

{¶ 3} Access to the combined expressway is from one of several streets or highways, of which Stimson Avenue is the most central. From Stimson Avenue, a motorist can enter Route 33 northbound or southbound or Route 50/32 eastbound or westbound.

{¶ 4} Stimson Avenue extends from its beginning at East State Street to its terminus at the city limits. The corporation limits of the city are marked by a sign at the southeast edge of the bridge over the Hocking River. That corporation-limit sign faces inbound traffic; there is no sign indicating the corporation limit to outbound traffic. The actual corporation line at that location, according to public record maps, is midway across the river approximately 100 feet inbound from the corporation-limit sign.

{¶ 5} Outbound from East State Street, the use of property fronting Stimson Avenue changes. The first portion is all commercial; the second portion is mixed commercial and residential; the third portion is vacant on one side and residential (Mill Street Village apartment complex) on the other. There are 25 mph

speed-limit signs at the beginning of each of the first two portions, but none in the third portion.  It is this third portion where defendant's speed was checked at 32 mph.

{¶ 6} Inbound distance measurements from the corporation-limit sign were made.  These are as follows:

a. Corporation sign to Mill Street Village access road   .1 mile
b. Corporation sign to Campbell Street traffic light   .3 mile
c. Corporation sign to last outbound 25 mph sign   .4 mile
d. Corporation sign to Palmer Street stop sign   .5 mile
e. Corporation sign to East State Street   .7 mile

{¶ 7} An outbound motorist on Stimson Avenue who passes the corporation-limit sign is then immediately in a 55 mph zone (the standard in unincorporated areas).  If the motorist goes straight onto the access ramp for Route 33 northbound/Route 50/32 eastbound, acceleration is required to safely merge onto the expressway.

{¶ 8} Just outside the corporation-limit sign is a wide spot on the shoulder across from where Athens County Road 25 meets Stimson Avenue.  Certain officers of the Ohio Highway Patrol ("OHP") park there during the early morning hours to look for drinking drivers leaving the city.  Most drivers stopped at that location at that time are stopped for minor violations and then found to have been drinking and possibly impaired.

{¶ 9} On February 9, 2008, at 2:36 a.m., OHP Trooper Bradley was parked at that wide spot facing inbound to check the speed of outbound drivers by radar.  Trooper Bradley clocked defendant at 32 mph just northwest of the bridge, which would be .1 mile inside the corporation-limit sign.  Trooper Bradley pursued and made a traffic stop for the alleged speed violation.

## CONCLUSIONS

{¶ 10} Ohio's speed-limit statute, R.C. 4511.21, is not a model of clarity.  It contains three different types of limits:

(1) Assured clear distance ahead   4511.21(A)
(2) Reasonable for conditions with prima facie limits   4511.21(B)
(3) Highway limits   4511.21(D)

{¶ 11} Defendant is charged with a violation of 4511.21(B), exceeding the 25 mph statutory prima facie limit.  Prima facie limits are established as either standard, exceptions to the standard, or as exceptions to the exceptions.  To determine the applicable speed limit, the court must consider the standard speed limit and all of the applicable exceptions.

{¶ 12} The 25 mph limit is established as the standard in R.C. 4511.21(B)(2): Twenty-five miles per hour in all other [other than school zones] portions of a municipal corporation, except on state routes outside business districts, through highways outside business districts, and alleys.

If an area is within the corporation limits, the speed limit is 25 mph, unless it is a state route or through highway which would have a 35 mph limit, R.C. 4511.21(B)(3) unless the state route or through highway was a business district approved and marked by the Ohio Department of Transportation ("ODOT") which would have a 25 mph limit, R.C. 4511.21(I).

{¶ 13} Therefore, the relevant factual determinations are whether the area where defendant was cited is:

(1) In a municipal corporation

(2) On a state route

(3) On a through highway

(4) In a business district

{¶ 14} As noted, the area immediately northwest of the Stimson Avenue bridge is within the Athens city limits and thus in a municipal corporation. The other three terms above are defined in the Revised Code:

"State route" means every highway that is designated with an official state route number and so marked.

R.C. 4511.01(JJ):

"Through highway" means every street or highway as provided in section 4511.65 of the Revised Code.

R.C. 4511.01(HH):

Other streets or highways, or portions thereof, are hereby designated through highways if they are within a municipal corporation, if they have a continuous length of more than one mile between the limits of said street or highway or portion thereof, and if they have "stop" or "yield" signs or traffic control signals at the entrances of the majority of intersecting streets or highways.

R.C. 4511.65(B):

"Business district" means the territory fronting upon a street or highway, including the street or highway, between successive intersections within municipal corporations where fifty percent or more of the frontage between such successive intersections is occupied by buildings in use for business, or within or outside municipal corporations where fifty percent or more of the frontage for a distance of three hundred feet or more is occupied by buildings in use for business, and the character of such territory is indicated by official traffic control devices.

R.C. 4511.01(NN):

{¶ 15} Although Stimson Avenue provides access to Ohio Route 32 and U.S. Routes 33 and 50, the avenue itself is not designated as a state route within the city. The white 33/50/32 junction signs located within the city limits are advisory

as to an upcoming intersection. The green 33/50/32 signs at the junction of Athens County Road 25 are outside the corporation limits. Therefore, the court concludes that the state or federal routes do not include Stimson Avenue northwest of the bridge.

{¶ 16} As noted, Stimson Avenue is no more than .7 mile in distance from its beginning to the corporation limits. Therefore, the court concludes that Stimson Avenue is not a through highway as defined in R.C. 4511.65(B). *Euclid v. Bittel* (1983), 11 Ohio App.3d 259, 11 OBR 386, 464 N.E.2d 183.

{¶ 17} Although Stimson Avenue may be zoned for business use, such zoning regulates permissible use rather than reflects actual use. The area within .1 mile (528 feet) of the corporation limits is vacant or residential and, as defined by R.C. 4511.01(NN), cannot be a business district for speed-limit purposes.

{¶ 18} Having concluded that the area immediately northwest of the Stimson Avenue bridge is not a state route, not a through highway, and not a business district, the court determines that the question of ODOT approval is moot. R.C. 4511.21(I) refers only to approved signs for speeds that are exceptions to the standard prima facie limit. No exceptions apply to the 25 mph standard in this case.

{¶ 19} Having concluded that the area is a 25 mph zone by default, we must decide the remaining issue of signage unrelated to R.C. 4511.21(I). R.C. 4511.11(a) mandates that local authorities "shall place and maintain traffic control devices in accordance with the department of transportation manual and specifications for a uniform system of traffic control devices adopted under Section 4511.09 of the Revised Code * * * to regulate, warn or guide traffic." The Ohio Department of Transportation has enacted the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD"), which includes speed-limit signs. The OMUTCD is accorded the force of law. *St. Paris v. Malikov*, Champaign App. No. 2007CA6, 2007-Ohio-6260, 2007 WL 4191929.

{¶ 20} OMUTCD Chapter 2B (2005) contains the rules for regulatory signs such as those for speed limits. Section 2B.01 requires that "[r]egulatory signs shall be used to inform road users of selected traffic laws or regulations and indicate the applicability of the legal requirements" and that "[r]egulatory signs shall be installed at or near where the regulations apply." Section 2B.18 requires that "[a]dditional speed limit signs shall be installed beyond major intersections and at other locations where it is necessary to remind road users of the speed limit that is applicable."

{¶ 21} Neither the court nor respective counsel have found case authority on point as to the placing of speed limit signs in an area covered by the 25 mph standard in R.C. 4511.21(B)(2). The overall purpose of the OMUTCD require-

ments is to provide fair notice to motorists. Even when the standard speed limit applies, it may be "necessary to remind road users of the speed limit that is applicable." OMUTCD Section 2B.18. The subject area is visibly different from any other 25 mph zone in the city of Athens. It is not readily apparent that an outbound motorist is still within the zone indicated by the last 25 mph sign, which is .3 of a mile before the subject area. The last speed limit sign is in a mixed commercial/residential zone, whereas the subject area is much less congested.

{¶ 22} From a traffic-engineering viewpoint, there may be legitimate reason for a low speed limit to allow County Road 25 and Hockhocking Adena bike-path traffic to enter. However, given that the purpose of a speed limit is safety rather than to establish a speed trap for law-enforcement opportunity, a 25 mph limit sign in the vicinity of the Sonic restaurant or Mill Street Village access road is necessary to comply with the fair-notice requirement of OMUTCD Section 2B.18.

{¶ 23} Failure of the government authorities to comply with the OMUTCD signage requirements makes the speed limit unenforceable. *State v. Arnold,* Wayne App. No. 03CA0010, 2003-Ohio-4527, 2003 WL 22015449; *Mentor v. Mills* (July 22, 1988), Lake App. No. 12–269, 1988 WL 76764.

{¶ 24} The prima facie speed limits noted in R.C. 4511.21(B) are not absolute. The actual prohibition is speed that is unreasonable for conditions with the standard prima facie limit, creating a rebuttable presumption of a reasonable maximum speed. Under certain circumstances, a speed of 30 to 35 in a 25 mph zone might not be unreasonable for conditions. The lack of appropriate signage is a factor to be considered. *St. Paris,* 2007-Ohio-6260, 2007 WL 4191929.

{¶ 25} Given the lack of required signage, the uncongested area, and the time of night, the court finds that defendant's speed of 32 mph was not unreasonable for conditions.

{¶ 26} This court has, in past decisions, held that law enforcement officers may rely on posted prima facie speed limit signs to establish reasonable grounds for a traffic stop even when the court would not find speed unreasonable for conditions beyond a reasonable doubt. The court distinguishes those decisions, which relied on properly placed regulatory signs. Given fair notice, a motorist exceeding the posted prima facie limit is subject to a traffic stop.

{¶ 27} Having concluded that defendant was not given fair notice of the speed limit and that his speed of 32 mph was not unreasonable for conditions, the court finds that his speed did not justify a traffic stop.

{¶ 28} Defendant's motion to suppress is granted.

*Motion granted.*