[Cite as *Fairborn v. Flagg*, 2019-Ohio-3387.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| CITY OF FAIRBORN | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-49 |
| | : | |
| v. | : | Trial Court Case No. TRD1710394 |
| | : | |
| RONNIE D. FLAGG | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of August, 2019.

. . . . . . . . . . .

BRITTANY A. DOGGETT, Atty. Reg. No. 0090704, 510 West Main Street, Fairborn, Ohio 45324
    Attorney for Plaintiff-Appellee

JOHN K. LIMOLI, Atty. Reg. No. 0058551, 1402 Sunset Drive, Fairborn, Ohio 45324
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Ronnie D. Flagg appeals from the November 30, 2018 judgment of the Fairborn Municipal Court finding him guilty of speeding and fining him $85. We hereby affirm the judgment of the trial court.

{¶ 2} Flagg was cited on August 15, 2017, for operating a vehicle on Sandhill Road over the 25 miles per hour (mph) speed limit, in violation of City of Fairborn Codified Ordinance 331.13, a minor misdemeanor. His citation provided that his speed was 52 mph on dry pavement with clear visibility. In the "Comments" section of the citation, it provided that Flagg "stated that his sandal was stuck on the gas pedal and he did not intend to go that fast."

{¶ 3} On August 21, 2017, Flagg entered a plea of not guilty. On November 13, 2017, Flagg filed a motion to dismiss based on "Ohio's Reasonable for Conditions Speed Limits." Flagg asserted that "Ohio is a 'reasonable for conditions' State and the conditions at the time and place of the alleged violation may rebut evidence that a defendant was exceeding the speed limit. Essentially, with few exceptions, there is no fixed speed limit in Ohio." Flagg asserted that speed limits fall into two basic categories: fixed limits and "reasonable speed with prima facie lawful limits." He asserted that in states that use the "reasonable speed with prima facie lawful limits" rule, exceeding the posted limit constitutes a prima facie showing that the statute was been violated, but that prima facie showing may be rebutted by the defendant. Flagg asserted that, in order to rebut the prima facie showing, a defendant must show that his speed was not unreasonable "for the conditions existing at the time and place of the alleged violation." He argued that, at the time of his citation "[v]isibility and road conditions were good. The street was of normal width, pavement was dry, weather was clear. There were no

adverse conditions. There were no pedestrians, no bicyclists and no motorcyclists. There were no critters on the ground and not a bird in the sky." Flagg asserted that, since his speed was reasonable for the conditions existing at that time and place, he was not guilty of violating "an ordinance that contains language specifying that the determination of speed must consider the reasonableness for conditions."

{¶ 4} Although the City did not respond to the motion to dismiss, the municipal court concluded that Flagg's arguments related to issues of fact which must first be determined at trial, and it overruled the motion to dismiss.

{¶ 5} Flagg was tried before a magistrate on March 6, 2018. The evidence at trial was as follows:

{¶ 6} Fairborn police officer William Karolyi testified that he was certified in radar and laser speed detection. On August 15, 2017, at about 5:50 p.m., he was "running the stationary radar post" on Sandhill Road; Karolyi had just completed a traffic stop and was moving back to his position where he was "running stationary radar." Karolyi testified that he was traveling eastbound on Sandhill near Eastview, and he saw a vehicle coming toward him (Flagg's vehicle) that appeared to be traveling at a speed much greater than the posted 25 mph limit. Karolyi moved his radar into the "moving mode" and recorded the car's speed at 52 mph. According to Karolyi, the calibration of his radar was checked prior to the start of his shift that day, after each traffic stop he made that day, and again after he stopped Flagg.

{¶ 7} Karolyi testified that he made U-turn, got behind Flagg's car, and activated his emergency lights to effectuate a traffic stop. He "used a couple of short chirps" of his siren, at which point Flagg pulled into a yard on Sunset. Karolyi explained the reason

for the stop to Flagg, who "stated that his flip-flop or his sandal had gotten stuck on the gas pedal, he wasn't intending going that fast however * * * his footwear caused him to increase to that speed." Karolyi issued a citation to Flagg.

{¶ 8} On cross-examination, when shown a copy of Flagg's citation, Karolyi testified that the ticket accurately reflected the conditions at the time of the traffic stop. He testified that "the roadway was dry. It was a clear, sunny day. Wasn't any adverse weather. Traffic was moderate. It's a residential area." A video of the traffic stop was played for the magistrate, after which defense counsel observed that there seemed to be no other cars on the road. Karolyi responded that "in that short seven, eight seconds, you are correct, there was not any [other car] right then and there. There was one coming up after I made my U-turn, behind me."

{¶ 9} The following exchange occurred:

DEFENSE COUNSEL: Officer, I'm going to make a statement and I want to know whether you agree or disagree with me on this particular statement. Would you agree that a person whose speed is unsafe for conditions also has a speed that is unreasonable for conditions?

PROSECUTOR: And I'm going to object. We're not proceeding under unsafe conditions. We're proceeding that he traveled over [a] posted speed limit. The question is irrelevant.

* * *

DEFENSE COUNSEL: I believe it is relevant because I have a motion in this particular matter and both the Revised Code and Codified Ordinances of Fairborn discuss reasonable * * * in the wording.

MAGISTRATE: I'm going to agree with [the prosecutor] that that's irrelevant.

{¶ 10} The defense did not call any witnesses. At the conclusion of the trial, the magistrate found that Officer Karolyi's testimony was credible and found Flagg guilty of speeding 52 mph in a 25 mph zone. The magistrate imposed a fine of $85 plus court costs.

{¶ 11} On March 8, 2018, Flagg filed objections to the magistrate's decision. He argued:

* * * On the day of trial, defense counsel attempted to raise the issue of whether the speed was reasonable for conditions. The prosecution objected arguing that this Court had already addressed the issue when it overruled the defendant's motion. The Magistrate agreed with the [City], held that the issue of whether the speed was reasonable for conditions had previously been presented in the defendant's motion and had been overruled by the Court. The Magistrate sustained the prosecution's objection and ordered that the defendant was not permitted to raise that issue or present evidence on that issue before the trial court.

Flagg argued that the Magistrate erred to his prejudice by prohibiting him from arguing that his speed was reasonable for the conditions.

{¶ 12} On July 27, 2018, the municipal court sustained Flagg's objection. The court determined as follows:

* * * [Fairborn Ordinance 331.13] as applied to the case *sub judice* is a prima facie violation, not a per se violation. As such, once the [City] has

established a prima facie case establishing a rebuttable presumption, the defendant may present evidence showing that in the circumstance the speed was neither excessive nor unreasonable. * * *

At the trial, defense counsel began to ask the citing officer whether a person whose speed is unsafe for conditions is unreasonable for conditions. The Magistrate granted the objection and did not allow evidence to be presented on this issue. The Court finds that the Magistrate erred in not allowing evidence to be submitted by the defendant to rebut or negate the prima facie case with evidence that the speed was neither excessive nor unreasonable.

* * * This matter is hereby remanded for trial before the Magistrate to allow additional evidence consistent with this decision.

{¶ 13} The magistrate held another hearing on August 21, 2018. The following exchange occurred at the start thereof:

MAGISTRATE: * * * It's my understanding that the Judge has remanded the case * * * to allow [Defense Counsel] to ask a question.

[DEFENSE COUNSEL]: Yes.

MAGISTRATE: I think – at the original trial, the prosecutor objected to a question and I sustained the objection.

The Judge has reviewed [Defense Counsel's] objection and agreed with [him] that I should not have sustained the objection. * * *

[DEFENSE COUNSEL]: Yes.

MAGISTRATE: Is that - - are we all on the same page?

[PROSECUTOR]: It was my understanding that it was remanded for a new trial unless defense is willing to stipulate to the testimony that's already been presented by the officer.

* * *

MAGISTRATE: A brand new trial?

[DEFENSE COUNSEL]: * * * I - - believe the court is correct, that it was remanded simply to permit me to put on evidence regarding conditions.

The state has already met its initial burden of establishing a prima facie case that my client exceeded the speed limit of 25 miles an hour, was inside the city.

I wanted to put on some evidence regarding the reasonableness for the conditions, which means I need to discuss the conditions.

* * *

MAGISTRATE: * * * And so - - [Prosecutor], do you feel like you still need to redo the whole trial or do you feel like just allowing [Defense Counsel] to cross-examine the officer would be sufficient?

[PROSECUTOR]: I guess what I - - what I heard [Defense Counsel] say is that * * * they agree that the defendant was travelling within the city limits of Fairborn, that the posted speed limit was 25 and he was travelling 52.

And * * * if you're willing to stipulate to that, I don't think we need to redo all of that testimony.

[DEFENSE COUNSEL]: I'll - -

* * *

[DEFENSE COUNSEL]:   - - stipulate to the fact that he was exceeding the speed limit.   The speed limit's 25 in that particular area.

[PROSECUTOR]:   In that case, then I think we need to put the officer back on to do my portion of it.   I - - 'cause I think she remanded it for a new trial to allow him to ask those questions but I don't know how you can remand it just for cross.

MAGISTRATE: * * * We'll start fresh, new today. * * *

{¶ 14} After Officer Karolyi was put under oath, the following exchange occurred:

[DEFENSE COUNSEL]:   May I have a few minutes with the prosecutor to see if we can iron this out and * * * not waste any of the court's additional time?

* * *

[DEFENSE COUNSEL]:   * * * [T]he initial issue is is there a prima facie showing that my client was exceeding the speed limit, * * * there is a showing to that extent and the court [sic] has met its burden there.   We - - redo this and the result will be the same, my client was exceeding the posted speed limit.

We're not saying Mr. Flagg was doing 35 or 36.   We're just saying he was exceeding the posted speed limit and with that, and that alone, the court would be correct in finding him guilty.

However, * * * my client can rebut that initial showing regarding the reasonableness of the conditions at the time and whether those conditions

were optimal for (inaudible) speed or horrible, glare ice, demanding * * * a much lower speed than the posted 25.

MAGISTRATE WOMACK:   * * * I didn't actually speak to the Judge about this.

I've only read her written decision and so if there's some confusion about whether it's remanded for a whole new trial or just remanded to allow cross-examination, * * * I'm going to just start fresh * * * and it was some time ago that we had the hearing and so we'll just start fresh with a whole new trial * * *.

{¶ 15} Officer Karolyi testified that he was working the day shift from 7:00 a.m. to 7:00 p.m., when he observed Flagg while travelling east on Sandhill Road.   Karolyi testified that, as he was nearing the intersection of Eastview, he saw a maroon vehicle coming toward him that appeared to be travelling at an excessive rate of speed and over the 25 mph posted limit.   Karolyi stated that he was trained in the visual estimation of speed. He activated his radar in the "moving mode" upon seeing Flagg, and it gave him a reading of 52 mph.   He testified that his radar device was properly calibrated and that the area of Sandhill Road with the posted speed limit of 25 mph was within the City of Fairborn.

{¶ 16} Karolyi testified that he made a U-turn in the intersection of Eastview and got behind Flagg.   Flagg turned onto Sunset as Karolyi activated his lights; Karolyi explained that Sunset makes a hard turn to the left, at which point Flagg pulled into the "front tree lawn" of a residence, which was defense counsel's residence.   Karolyi testified that Flagg apologized and stated that he "didn't intend to go that fast.   There was

something about his sandal got stuck on the gas pedal."

{¶ 17} On cross-examination, Karolyi testified about the boundary between the township and the City of Fairborn on Sandhill. Karolyi also testified that the road was dry, visibility was clear, there were no adverse conditions, and traffic was moderate. Karolyi testified that, in addition to his and Flagg's vehicles, there was traffic "coming off the side streets." The dash camera video was played for the magistrate. Thereafter, the following exchange occurred:

Q [DEFENSE COUNSEL]. * * * The classification of the traffic at the time, you classified as moderate. Do you still believe that that was moderate? * * *

A [KAROLYI]. In that short snippet of the video, I would say not but it - - I was in that area for several minutes prior to that, operating traffic.

It's kind of like if the sun is out, then it goes behind a cloud, it's not cloudy that day. So the exact time that that vehicle was on the roadway, light to moderate, depending on how you determine how many vehicles make moderate.

Q. How about none to light?

A. I said at least three vehicles to me could be light to moderate.

Q. * * * We can run through this again. I only saw your car.

A. You are correct.

Q. And his car?

A. That is correct.

* * *

Q. * * * The ticket you issued * * * with the exception of what we just discussed here, you stand by the ticket as far as all the conditions?

A. Yes.

{¶ 18} On redirect examination, Karolyi was asked whether, in his 27 years of experience, it was safe to travel more than twice the posted limit; he responded that he had considered charging Flagg with reckless driving rather than speeding, because of the residential nature of the area and how hast he was driving.

{¶ 19} Flagg testified that, on the day he was cited, the pavement was dry, visibility was good, it was sunny, and there were no adverse conditions. When asked about the level of traffic, he testified that it was "[j]ust [him] on the road" and that the road he was driving on was "just clear all the way through." Flagg testified that he did not see any pedestrians or anyone outside in a yard. He also testified that he "really couldn't drive because [his] sandals * * * kept slipping."

{¶ 20} At the start of the prosecutor's cross-examination, Flagg's attorney advised the court that Flagg had been operating his (defense counsel's) vehicle when he was stopped; the vehicle was for sale and Flagg had been test-driving it. In his testimony, Flagg agreed that the speed limit in the area of his stop was 25 mph. He asserted he had actually slowed the vehicle down and unhooked his seatbelt to grab his sandal, and then when he looked up, "the officer was looking at [him] like what are you doing," whereupon Flagg drove to defense counsel's house. Flagg testified that, as soon as he got out of the car, Karolyi "attacked" him.

{¶ 21} Flagg testified that he was travelling between 27 and 30 mph, which he knew because he was "in second gear" and his down-shifting "would have dropped [his]

speed down." Flagg testified that Karolyi's testimony that he apologized to the officer and told him that he did not intend to go so fast, but was having trouble with his sandal, was inaccurate. Flagg testified that he explained that his movements within the car, which he assumed had been seen by Karolyi, were because he had a problem with his sandal.

{¶ 22} On redirect examination, Flagg testified that the vehicle was a four-door Saturn five speed with a stick shift. He testified that he "knew what [he] was doing," but he had to get his sandal off to "get the car back home." Flagg testified that, upon seeing him, Karolyi turned around, followed him, and drew his gun.

{¶ 23} On recross-examination, Flagg was asked if Karolyi's gun was visible in the video, Flagg responded that, when he (Flagg) got out of the vehicle, Karolyi "jumped behind his vehicle and said free (phonetic), get back in the car." When defense counsel approached an explained that Flagg had been test-driving counsel's car, "then the officer put his gun back into his holster" and said he was sorry.

{¶ 24} Karolyi was then re-called, and he denied drawing his weapon in the course of the stop. He stated that, when Flagg got out of the vehicle, Karolyi told him to get back inside it.

{¶ 25} In a September 6, 2018 decision, the magistrate found that the City had established a prima facie case of speeding under the ordinance and that Flagg did not dispute traveling 52 mph, but that Flagg argued that this speed was "reasonable for the conditions." The magistrate noted that Flagg pointed to the fact that the road was dry, it was sunny, and there was no other traffic, but the magistrate concluded that "these facts alone do not rebut [the] presumption. Although it was dry and sunny, Defendant was

exceeding the limit by 27 mph in a residential area where there are many driveways, mailboxes and mature trees" and a nearby park. The magistrate credited Karolyi's testimony that Flagg had stated that he had not intended to go so fast, but his sandal got stuck on the gas pedal and he had to reach down to free it. The magistrate also noted that Flagg "was distracted when reaching down while traveling without a seatbelt at this rate of speed." According to the magistrate, Karolyi's dash cam video depicted Flagg speeding past an intersection and quickly approaching another, Sunset Drive, onto which Flagg made a sharp left turn before pulling onto the front lawn of a residence. The magistrate concluded that Flagg's speed was "unreasonable and excessive," that "the City's prima facie case of speeding was not overcome," and that the evidence supported a finding of guilt.

{¶ 26} Flagg filed objections to the magistrate's decision on September 20, 2018. Flagg argued that the magistrate had erred to the his prejudice by failing to comply with the previous instructions of the trial court when she conducted a trial de novo instead of the limited hearing to permit introduction of evidence related to the conditions at the time of the traffic stop. Flagg also asserted that any "evidence produced by the [City] at the second hearing was not properly before the Magistrate" and any decision rendered as a result of that of that evidence was "unwarranted." Flagg asserted:

> While the Magistrate found that "Sandhill Road is a small two lane road in a residential area with a park nearby," she failed to acknowledge that the park is not in the vicinity of the speeding violation. * * * There is nothing to suggest that Sandhill Road is "small" or is any smaller than similar roads such as Hyde Road with a 55 mph limit. * * * The Magistrate also

stated: "Although it was dry and sunny, Defendant was exceeding the limit by 27 mph in a residential area where there are many driveways, mailboxes and mature trees. The Officer testified that there was a nearby park as well." There was no evidence that there were *many* driveways, mailboxes and mature trees. Any testimony regarding a park was inappropriate because the park was not in the area of the violation. There was testimony that there was not another car in sight, that there were no pedestrians, that there were no stray animals and that there were no cyclists. A review of the dash cam video shows that, prior to seeing the defendant's car, the police car was traveling at 35 mph and, it follows, the officer either believed that the speed limit should be greater than 25 mph or that he was simply speeding. The Officer admitted that he did not mark the ticket as "unsafe for conditions." The Officer agreed that if speed is not unsafe for conditions, it is reasonable for conditions. When asked whether he would change anything on the ticket, the officer stated "No." The defendant testified that, while he had an issue with one of his sandals, it did not impair his driving, that he had his eyes on the road at all times and that he was in full control of the vehicle at all times. The Officer did not suggest, and the record does not support, any allegation of distracted driving, erratic driving or failure to maintain the lane of travel.

{¶ 27} On November 30, 2018, the court sustained in part and overruled in part Flagg's objections. The court found that the magistrate did not err by holding a new trial and that the new trial did not prejudice Flagg, because even if the magistrate had only

held a limited hearing, as Flagg wanted, the City would still have been able "to cross-examine witnesses and ask questions on redirect, and call witnesses in rebuttal, just as it did in the new trial." According to the court, "it was a difference without a distinction." The court noted that the area where Flagg's vehicle was clocked travelling 52 mph was a residential area, with a dog park and recreational park shortly down the road, while acknowledging that it was "a clear and sunny day with clear visibility and no adverse conditions."

{¶ 28} The court found Flagg's objection to the magistrate's finding that "the road was small and there were many driveways, mailboxes, and mature trees" to be meritorious. According to the court, there was no evidence of the size of the road or the location of driveways, mailboxes, or mature trees. Thus, the magistrate's finding in this respect was incorrect. The court also noted, however, that Flagg suggestion that the park on Sandhill Road was not near the location of the speeding violation would "also fabricate evidence, as that information was not produced as evidence at trial." The court noted that, although defense counsel tried to suggest during his closing remarks that the park was not close to the stop, closing remarks are not testimony.

{¶ 29} The court concluded as follows:

Defendant argued at trial that because dogs and children were not present at the time of the violation, that Defendant's speed was safe for conditions. The Court finds that the State met its burden in proving the prima facie case that Defendant was speeding when operating the Saturn at 52 miles per hour in a 25 mile per hour zone. The Court further finds that Defendant failed to establish a rebuttable presumption that the speed

was neither excessive nor unreasonable. The evidence established that the area of the violation was residential with a dog park and recreational park down the road. The Court finds that travelling 52 miles per hour in a residential area with a dog park and a recreational park just down the road is unreasonable as well as excessive.

{¶ 30} The court found Flagg guilty of violating Fairborn Codified Ordinance 331.13, and it imposed a fine of $85 plus court costs. Flagg filed a motion for a stay pending appeal, which the municipal court granted.

{¶ 31} Flagg asserts two assignments of error herein which we will consider together. They are as follows:

A TRIAL COURT ERRS, AS A MATTER OF LAW, WHEN IT PRESUMES WHAT EVIDENCE A PARTY WOULD PRESENT AND PROCEEDS TO REACH A JUDGMENT BASED ON THAT PRESUMPTION.

THE TRIAL COURT ERRED, TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY CONSIDERING EVIDENCE OUTSIDE THE AREA OF THE SPEEDING OFFENSE WHEN DETERMINING WHETHER THE SPEED WAS REASONABLE FOR CONDITIONS.

{¶ 32} We initially note that both parties erroneously captioned their briefs "*State of Ohio v. Ronnie Flagg*," and that the proper case name is "*City of Fairborn v. Ronnie Flagg.*" Despite the repeated references in the briefs to "the State," the State of Ohio is not a party herein.

{¶ 33} Flagg directs our attention to Crim.R. 19[1] and asserts that the case was remanded to the magistrate "with limiting instructions" that afforded Flagg the opportunity to present evidence regarding the conditions at the time of the stop. He argues that there had been a previous determination that the City met its prima facie burden of proof, and therefore "the evidence to be presented should have been in the sole discretion of defense counsel." Flagg asserts that the "trial court presumed that the prosecution would be able to present the same evidence it did present based on the evidence defense counsel might present. This presumes that defense counsel would have called Officer Karolyi and that defense counsel would have covered the same evidentiary areas as the State did in its direct." Flagg argues that these presumptions were "unwarranted." According to Flagg, the main area of contention related to Karolyi's characterization of the traffic at the time of the stop as "moderate." The defense believed that characterization to be inaccurate and in direct conflict with the dash cam video, which showed two cars on the road, one belonging to the police department and the other driven by Flagg. He asserts that there was "nothing to show that Flagg would have called any witnesses much less Officer Karolyi. It is unlikely that Flagg would have introduced evidence related to a dog park or a park because such evidence was irrelevant." Flagg argues that, if "the parks had any significance, the State would have elicited testimony regarding them at the earlier hearing." Flagg asserts that the magistrate chose to ignore

---

[1] "Crim.R. 19 governs the authority of magistrates in criminal cases. * * * [M]agistrate's sitting in misdemeanor cases are authorized to 'determine guilt or innocence, receive statements in explanation and in mitigation of sentence, and recommend a penalty to be imposed.' " *State v. Pennington*, 2d Dist. Montgomery No. 23367, 2010-Ohio-2139, ¶ 12. "A magistrate's decision is not effective unless it has been adopted by the court. Crim.R. 19(D)(4)(a)." *Id.* at ¶ 14.

the trial court's order "and grant a new trial to the prosecution."

{¶ 34} In his second assignment of error, Flagg asserts that the trial court erred by considering irrelevant evidence, because when a trial court determines whether an alleged speeder has met his burden of establishing that the speed was reasonable for the conditions, the court is limited to considering only those conditions present "at [the] immediate time and place of the alleged violation." Based on his argument that "Ohio is a 'reasonable conditions' State," Flagg argues that the conditions at the time and place of an alleged violation may rebut evidence that a defendant was exceeding the speed limit. "Essentially, with few exceptions, there is no fixed speed limit in Ohio."

{¶ 35} According to Flagg, whether a driver's speed is excessive or unreasonable under the circumstances is a question of fact. He argues that Officer Karolyi did not check the box on the citation for "Unsafe for conditions," so there was nothing to suggest that he found Flagg's speed unsafe or unreasonable for conditions. Flagg also argues that the dash cam video of the incident showed there were only two cars on the road, the patrol car and Flagg's car. According to Flagg, "Sandhill is capable of sustaining 55 mile per hour traffic and two portions of the road are in the township and are subject to a 55 mile per hour speed limit." Flagg also asserts that there was no evidence in the record "to show that either [he] or the police car drove past" a dog park or a recreational park or that any person or dog was in danger.

{¶ 36} According to Flagg, the "central issue is: what were the conditions at the time and place of the violation? There is a dog park *down* the road. There is a recreational park *down* the road. Neither car passed either park. * * * The State did not introduce any evidence to show the proximity of the parks to the speeding violation."

Flagg asserts that his speed was reasonable considering the conditions existing at the time, and that "preceding conditions or subsequent conditions [were] irrelevant for determining the reasonableness" of his speed. He argues that conditions and traffic levels at other times were irrelevant. Flagg argues that the trial court erred by considering the parks "when the evidence shows that the parks were not in the immediate vicinity of the incident." Flagg asserts that, while the evidence showed that he exceeded the speed limit, the evidence also showed that "the conditions at the time of the incident were optimal and that, under those conditions, the defendant's speed was not unreasonable."

{¶ 37} Finally, Flagg asserts as follows:

This matter was returned to the magistrate with specific limiting instructions to permit the introduction of evidence regarding the conditions existing at the time of the incident. Although the State had not complied with the rules covering objections to a magistrate's decision, the magistrate, nevertheless, granted a new trial to the State. When Flagg objected, the trial court determined that any evidence presented at the second hearing would have to have been presented anyway because the State could cross-examine defense witnesses and could offer rebuttal testimony. It follows that the trial court would have to presume what evidence, if any, the defense would offer. The trial court would also have to presume that the defense objections regarding the scope would automatically be overruled. A trial court errs when it presumes what evidence the defendant would have offered.

{¶ 38} The City responds that the trial court did not err by holding a new trial when the matter was remanded for the purpose of allowing Flagg to present evidence that his speed was neither excessive nor unreasonable. According to the City, a new trial was held, rather than a limited trial, because Flagg "would not stipulate to the testimony that had already been presented by the officer." The City asserts that Flagg was given ample opportunity to present evidence, such as "the conditions at the time of the arrest, including visibility, pavement conditions, and weather." According to the City, Flagg "believes that if the trial had been limited, Officer Karolyi would not have mentioned the parks down the road on Sandhill. However, as the court held, the State would still have been able to cross-examine witnesses, ask questions on redirect, and call witnesses in rebuttal." The City asserts that Flagg could have questioned the officer regarding the proximity of the park or put on his own testimony about the closeness of the park, but he chose not to do so. According to the City, the new trial did not prejudice Flagg; it afforded him the same opportunities he would have had if the trial had been limited to cross-examination. "The court did not presume what evidence Flagg would have presented because the new trial allowed him to present his evidence in whatever way he chose."

{¶ 39} Regarding Flagg's second assignment of error, the City argues that Flagg failed to present evidence necessary to overcome the rebuttable presumption created by the prima facie speeding. "Under Ohio Rev. Code § 4511.21, it is prima facie unlawful for any person to exceed any of the speed limitations established by statute." The City asserts that, while a court may find sufficient evidence to rebut this presumption, it is not required to do so "just because a defendant presents supporting evidence." The City argues that it proved its prima facie case, and Flagg failed to overcome the rebuttable

presumption by showing that his speed was neither excessive nor unreasonable. The City asserts that the location of the parks merely showed the character of the surrounding area. Although Officer Karolyi did not check the box marked "unsafe for conditions," "in other cases, the courts have found that 'unsafe for conditions' does not need to be marked to sustain a conviction under the prima facie provision of the statute." The City argues that the primary focus of the trial court's decision was that Flagg was speeding at 52 mph in a residential area.

{¶ 40} In reply, Flagg asserts that he testified that "the sandal issue did not impair his driving and did not distract his attention from the road." According to Flagg, although Karolyi stated that the area was "residential," counsel could not find Karolyi's statement that there were many driveways in the area and there was nothing to show that there were many driveways.

{¶ 41} Flagg asserts that he does not suggest that a new trial prevented him from offering testimony or evidence in support of his theory of the case, but rather that there was "no legal reason for ignoring the trial judge's clear orders that limited the hearing to such evidence that the defendant chose to present" in support of his theory of the case and, instead, affording a new trial, when the City had not complied with the requirements necessary to merit a trial de novo. Flagg argues that he had admitted that the City had already met its prima facie burden necessary to establish the offense of speeding.

{¶ 42} Flagg argues that the citation and Karolyi's testimony established that there were no adverse conditions. The only controversy involved the traffic conditions at the time and place of the stop. The officer characterized the traffic conditions as "moderate," but the dash cam video did not support that characterization. He argues that the trial

court's presumptions about what evidence he would have introduced and about the resolution of any objections he may have made regarding material outside of the scope of direct were unwarranted. He notes that there was no mention of either a park or a dog park at the first hearing. According to Flagg, if the parks were important, the City would have presented evidence about them at the first hearing rather than presenting such evidence "as innuendo" at the second hearing. Flagg asserts that if he had been permitted to present his evidence under the limited order on remand, evidence about the parks may never had been admitted, "because the parks would have been outside of the scope of direct and improper on cross." He claims prejudice because the trial court mentioned both parks in its decision, although neither park was in the immediate area of the violation.

{¶ 43} Flagg argues that questions regarding whether a speed is reasonable for conditions "must, of necessity, consider the *immediate* vicinity of the violation." He argues that, while Karolyi testified that a park and dog park were "down the road," he "did not testify as to how far down the road meant." Flagg asserts that there was testimony that portions of Sandhill were located in the township with a 55 mph speed limit; "[t]here was nothing to suggest that the road was not uniform throughout and the reasonable presumption is that the road is capable of supporting a vehicle travelling at 55 miles per hour." According to Flagg, the dash cam video shows "nothing on the road," and if "the purpose of a speed limit is to prevent one car from striking either another or another object or person, the defendant's speed was reasonable for that purpose. Simply stated, you can't hit something when there is nothing to hit."

{¶ 44} City of Fairborn Codified Ordinance 331.13 governs speed limits and

provides:

(a) No person all operate a motor vehicle at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface and width of the street or highway and any other conditions, and no person shall drive any motor vehicle, in and upon any street or highway at a greater speed that will permit him to bring it to a stop within the assured clear distance ahead.

(b) It is prima-facie lawful, in the absence of a lower limit declared pursuant to this section by the Ohio Director of Transportation or local authorities, for the operator of a motor vehicle, to operate the same at a speed not exceeding the following:

* * *

(3) Twenty-five miles per hour in all other portions of the City, except on State routes, through streets and through highways outside business district and alleys;

* * *

(c)  It is prima-facie unlawful for any person to exceed any of the speed limitations in any section of this Traffic Code, or any declared by the Ohio Director of Transportation or local authorities.

 "Where a municipal ordinance makes it prima facie unlawful for a motor vehicle to exceed a certain speed limit in a described locality, a speed greater than that specified does not establish the commission of an offense or constitute unlawful conduct per se, but establishes only a prima facie case under the ordinance.  * * *."  *Village of St. Paris v.*

*Malikov*, 2d Dist. Champaign No. 2007 CA 6, 2007-Ohio-6260, ¶ 22, quoting *Cleveland v. Keaha*, 157 Ohio St. 331, 105 N.E.2d 402 (1952) and *Village of Bellville v. Keiffaber*, 114 Ohio St.3d 124, 2007-Ohio-3763, 870 N.E.2d 697, ¶ 17.

{¶ 45} As noted by the Twelfth District:

* * * A prima facie case is one in which the evidence introduced is sufficient to support, but not to compel a certain conclusion. * * * The trier of fact may determine that prima facie evidence alone is sufficient to establish a fact, but is not required to do so. * * * Instead, the trier of fact may be swayed by other evidence or by the facts and circumstances of the case. * * * *Id.* Such a provision creates "a rule of evidence raising a rebuttable presumption which may be overcome by evidence that in the circumstances the speed was neither excessive nor unreasonable. * * *

*State v. Rimedio*, 12th Dist. Butler No. CA2002-04-084, 2003-Ohio-79, ¶ 8, citing *Keaha* at 336 and others.

{¶ 46} As this Court has noted:

* * * [W]hat is reasonable and proper under the circumstances is a question of fact. A question of fact is always for the lower court to decide. The only reason a lower court's decision on an issue of fact would be overturned by a higher court would be if the decision was against the manifest weight of the evidence. Judgments supported by some competent, credible evidence going to all the elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. * * *

*State v. Winkler*, 2d Dist. Champaign No. 98-CA-18, 1999 WL 55720, *2 (Feb. 5, 1999).

{¶ 47} Officer Karolyi testified that his radar device detected Flagg's speed at 52 mph. As the trial court correctly determined, Flagg was entitled to present evidence to overcome the rebuttable presumption that arose from the evidence that he exceeded the 25 mph limit. We have reviewed the video of the stop, and we agree with Flagg that the Saturn and Karolyi's cruiser were the only vehicles visible on Sandhill Road at the time of the stop. We conclude, however, even without considering any testimony about "moderate" traffic and nearby parks,[2] that Flagg failed to rebut the prima facie evidence of unreasonable speed with evidence that his speed was not excessive or unreasonable under the circumstances. We also note that, contrary to the trial court's conclusion, several driveways, mature trees, and mailboxes were plainly visible in the video along the edge of Sandhill Road. We further note that Flagg passed a 25 mph speed limit sign on Sandhill Road, which was observable in the video.

{¶ 48} Flagg's speed was more than twice the posted limit, and Karolyi wrote on Flagg's citation that Flagg told him that "his sandal was stuck on the gas pedal and *he did not intend to go that fast.*" Karolyi's testimony at the second hearing was consistent with his comment on the ticket. Flagg himself testified that he "really couldn't drive" because of his sandals. While Flagg asserts that Sandhill was "capable of sustaining" 55 mph traffic and that two portions of the road in the township were subject to a 55 mph speed limit, the fact that the speed limit was reduced to 25 mph in the residential area of Flagg's

---

[2] We note that Flagg attached a Google Maps printout of Sandhill Road to his motion to dismiss. It depicted Sandhill Road Park, and according to the legend of the map, the park was approximately 200 feet from Sunset Drive. However, the map was not admitted as an exhibit at either trial.

offense, where there were side streets, mailboxes, and multiple driveways perpendicular to Sandhill Road, further supported the conclusion that 52 mph was excessive and unreasonable there, regardless of dry pavement, clear visibility and a lack of adverse conditions.   For the foregoing reasons, Flagg's assigned errors are overruled.

{¶ 49} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.

Copies sent to:

Brittany A. Doggett
John K. Limoli
Hon. Beth W. Cappelli